IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN DIMAIO, et al., *Plaintiffs*, v. CHAD WOLF, et al., *Defendants*. | Case No. 1:20-cv-00445 |

### PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

### THE FEBRUARY 5, 2020 RULE

1. In February 2012, the Department of Homeland Security (DHS) and Customs and Border Protection (CBP) published a final rule establishing the Global Entry program and promulgating regulations governing eligibility and the application process. *See Establishment of Global Entry Program*, 77 Fed. Reg. 5,681 (Feb. 6, 2012). That 2012 Final Rule is codified at 8 C.F.R. § 235.12.

2. Until February 5, 2020, the 2012 Final Rule governed eligibility criteria for the Global Entry program. Under the 2012 Final Rule, New York residents were eligible to enroll in Global Entry.

3. On February 5, 2020, DHS banned all New York residents from enrolling or re-enrolling in Trusted Traveler programs, including Global Entry.

4. DHS issued this pronouncement in a letter (the "February 5 Rule") from Acting Secretary Chad Wolf to officials with the New York State Department of Motor Vehicles ("DMV"). A true and correct copy of this letter is attached at Exhibit A.

1

5. DHS asserted that, effective "immediately," "New York residents will no longer be eligible to enroll or re-enroll in in CBP's Trusted Traveler Programs." *See* Ex. A at 3.

6. New York has roughly 20 million residents. United States Census Bureau, *Population and Housing Unit Estimates* (Jan. 29, 2020), https://www.census.gov/quickfacts/fact/table/NY,US/PST045219 (estimating 19.45 million New Yorkers).

7. DHS's action deprives the roughly 20 million residents of the State of New York of the ability to apply for or renew their participation in Global Entry and other Trusted Traveler programs.

8. According to the Acting Deputy Secretary of Homeland Security, at the time of the February 5 Rule, roughly 80,000 New York residents had applications pending for Trusted Traveler programs like Global Entry and 150,000 residents had active Trusted Traveler status set to expire in 2020.[1]

9. As a consequence of the February 5 Rule, DHS canceled all pending Global Entry applications by New York residents.

10. CBP estimates that the February 5 Rule is likely to affect roughly 800,000 people over the next five years.[2]

11. DHS explained that it was barring all New Yorkers from applying for Trusted Traveler programs because of a recent New York law that allows undocumented immigrants residing in New York to obtain driver's licenses. A true and correct copy of this letter is attached at Exhibit B, and the law is codified at N.Y. Veh. & Traf. Law §§ 201, 502, 508 (2019).

---

[1] Michelle Hackman & Jimmy Vielkind, *Homeland Security Steps Up Feud as It Blocks New Yorkers From Global Entry Program*, The Wall Street Journal, Feb. 6, 2020, http://archive.is/ShIr9.

[2] Gregg Re, *Global Entry Suspension to Affect 800k New Yorkers Over 5 Years, 86k Immediately, CBP Official Says*, Fox News, Feb. 6, 2020, http://archive.is/A79VY.

12. The February 5 Rule was not promulgated under the notice-and-comment provisions of the Administrative Procedure Act.

13. New York residents and other members of the public therefore did not have the opportunity to comment on the February 5 Rule or on DHS's justifications for it before the Rule went into effect. Although New York residents, including U.S. citizens who reside in New York, are no longer eligible to enroll in Global Entry under the February 5 Rule, citizens and nationals of multiple foreign countries remain eligible to enroll in Global Entry.

## PLAINTIFF JONATHAN DIMAIO

14. Plaintiff Jonathan DiMaio is a U.S. citizen and a resident of Brooklyn, New York. He is a filmmaker. *See* Ex. C (DiMaio Declaration).

15. Mr. DiMaio has a valid passport and meets the eligibility criteria for Global Entry set forth in 8 C.F.R. § 235.12. *See* Ex. C (DiMaio Declaration).

16. Mr. DiMaio frequently travels internationally. He has international travel scheduled over the next several months, including a trip to the Dominican Republic in summer 2020. *See* Ex. C (DiMaio Declaration).

17. Mr. DiMaio is finishing post-production of a feature film, which he will be submitting to international film festivals that will take place in 2021, and he anticipates international travel related to that process. *See* Ex. C (DiMaio Declaration).

18. Mr. DiMaio planned to enroll in Global Entry in February 2020 to make his upcoming international travel more convenient and, in particular, to reduce processing times at the airport. As a New York resident, he is no longer eligible to apply for Global Entry under the February 5 Rule. That is the case even though Mr. DiMaio has never had a New York-issued driver's license. *See* Ex. C (DiMaio Declaration).

19. Because of the February 5 Rule, Mr. DiMaio can no longer apply for Global Entry as planned.  *See* Ex. C (DiMaio Declaration).

20. The inability to use Global Entry will make it more difficult for Mr. DiMaio to travel internationally.  *See* Ex. C (DiMaio Declaration).

21. Mr. DiMaio plans to apply for Global Entry if the ban on New York residents is lifted.  *See* Ex. C (DiMaio Declaration).

## PLAINTIFF CORY FOX

22. Plaintiff Cory Fox is a U.S. citizen and a resident of Brooklyn, New York.  She is a teacher at a school in New York.  *See* Ex. D (Fox Declaration).

23. Ms. Fox has a valid passport and meets the eligibility criteria for Global Entry set forth in 8 C.F.R. § 235.12.  *See* Ex. D (Fox Declaration).

24. Ms. Fox frequently travels internationally.  She has international travel scheduled over the next several months, including a trip to the Dominican Republic in spring 2020.  *See* Ex. D (Fox Declaration).

25. Ms. Fox planned to enroll in Global Entry in February 2020 to make her international travel more convenient and, in particular, to reduce processing times at the airport.  As a New York resident, she is no longer eligible to apply for Global Entry under the February 5 Rule.  *See* Ex. D (Fox Declaration).

26. Because of the February 5 Rule, Ms. Fox can no longer apply for Global Entry as planned.  *See* Ex. D (Fox Declaration).

27. The inability to use Global Entry will make it more difficult for Ms. Fox to travel internationally.  *See* Ex. D (Fox Declaration).

28. Ms. Fox plans to apply for Global Entry if the ban on New York residents is lifted.  *See* Ex. D (Fox Declaration).

**PLAINTIFF JOCARDO RALSTON**

29.     Plaintiff Jocardo Ralston is a U.S. citizen and a resident of New York, New York. He teaches special education at a public school in New York.  *See* Ex. E (Ralston Declaration).

30.     Mr. Ralston has a valid passport and meets the eligibility criteria for Global Entry set forth in 8 C.F.R. § 235.12.  *See* Ex. E (Ralston Declaration).

31.     Mr. Ralston plans to travel to Buenos Aires, Argentina in February 2020.  He also plans to travel internationally during the school recess this summer.  *See* Ex. E (Ralston Declaration).

32.     Mr. Ralston seeks to enroll in Global Entry to make his international travel more convenient and, in particular, to reduce processing times at the airport.  He decided to apply for Global Entry after missing a flight in September due to lengthy delays at the U.S. customs checkpoint in Montreal.  *See* Ex. E (Ralston Declaration).

33.     Mr. Ralston submitted an online application for Global Entry on January 20, 2020, and paid the $100 application fee.  After applying, Mr. Ralston checked his online Trusted Traveler Program account.  The online account status indicated that his application was received and that an interview was pending.  His application remained pending at the time Defendants issued the February 5 Rule.  *See* Ex. E (Ralston Declaration).

34.     After learning about the February 5 Rule, Mr. Ralston logged into his online Trusted Traveler Program account.  The account now states "no application[] in progress."  *See* Ex. E (Ralston Declaration).

35.     DHS canceled Mr. Ralston's application under the February 5 Rule because he is a New York resident.

36.     The inability to use Global Entry will make it more difficult for Mr. Ralston to travel internationally.  *See* Ex. E (Ralston Declaration).

37. Mr. Ralston plans to apply for Global Entry if the ban on New York residents is lifted. *See* Ex. E (Ralston Declaration).

**CERTIFICATE OF SERVICE**

      I hereby certify that this document will be served on the Defendants in accordance with Fed. R. Civ. P. 4.

                                                */s/* Graham W. White
                                                Graham W. White
                                                601 Massachusetts Ave., NW
                                                Washington, DC 20001
                                                (202) 942-5000
                                                graham.white@arnoldporter.com