IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JONATHAN DIMAIO, ET AL.,            )
                                    )
          Plaintiffs,               )
                                    )      CV No. 20-445
                                    )      Washington, D.C.
        vs.                         )      June 22, 2020
                                    )      3:14 p.m.
CHAD WOLF, ET AL.,                  )
                                    )
          Defendants.               )
_____)


      TRANSCRIPT OF TELEPHONIC MOTIONS HEARING PROCEEDINGS
           BEFORE THE HONORABLE RICHARD J. LEON
            UNITED STATES SENIOR DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:          Graham Wheeler White
                             Elisabeth S. Theodore
                             ARNOLD & PORTER
                             KAYE SCHOLER LLP
                             601 Massachusetts Ave., NW
                             Washington, D.C. 20001
                             202-942-6345
                             Email:
                             graham.white@arnoldporter.com
                             Elisabeth.
                             theodore@arnoldporter.com


For the Defendants:          Dena Michal Roth
                             U.S. DEPARTMENT OF JUSTICE
                             Civil Division/
                             Federal Programs Branch
                             1100 L Street, NW
                             Room 11204
                             Washington, D.C. 20005
                             (202) 514-5108
                             Email: dena.m.roth@usdoj.gov

APPEARANCES CONTINUED:

Court Reporter:                    William P. Zaremba
                                   Registered Merit Reporter
                                   Certified Realtime Reporter
                                   Official Court Reporter
                                   U.S. Courthouse
                                   333 Constitution Avenue, NW
                                   Room 6503
                                   Washington, D.C. 20001
                                   (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

                        P R O C E E D I N G S

1

2          DEPUTY CLERK:  Good afternoon, Your Honor; good

3    afternoon to the parties.

4          This afternoon, we have Civil Action No. 20-445,

5    Jonathan DiMaio versus Chad Wolf, et al.

6          This is a motions hearing with everyone by

7    telephone.

8          Will speaking counsel for the plaintiff identify

9    him or herself and colleague for the record.

10         MR. WHITE:  This is Graham White on behalf of the

11   plaintiffs, from Arnold & Porter.

12         And I'm here with my colleague, Elisabeth

13   Theodore.

14         DEPUTY CLERK:  Will counsel for the defendant

15   please identify herself for the record.

16         MS. ROTH:  This is Dena Roth on behalf of the

17   defendants.

18         THE COURT:  All right.  Welcome, everyone.

19         We're here for the oral argument on the motion

20   for -- partial motion for summary judgment.

21         We'll hear from the moving party first.  You can

22   have 20 minutes, and reserve up to five minutes of that for

23   rebuttal, if you'd like; it's your call.

24         And then the government will have 20 minutes as

25   well.

1              What's your pleasure, Mr. White?

2              MR. WHITE:  Thank you, Your Honor, and may it

3     please the Court.

4              With the Court's permission, I would like to

5     reserve five minutes for rebuttal.

6              THE COURT:  Okay.  Thank you.

7              MR. WHITE:  The Department of Homeland Security

8     has excluded 20 million New Yorkers from applying for Global

9     Entry and other Trusted Traveler Programs.

10             DHS announced this sweeping change in a two-page

11    letter to New York state officials, without providing the

12    public with advanced notice or an opportunity to comment.

13    This is a clear-cut violation of the Administrative

14    Procedure Act, and the Court should vacate the rule.

15             I have three main points that I'll outline briefly

16    and then will explain to you in greater detail:

17             So, first, DHS's decision to ban all New Yorkers

18    from applying to these programs is a legislative rule.  And

19    because it's a legislative rule, the APA required DHS to

20    promulgate it through notice-and-comment rulemaking.  It is

21    not a general statement of policy or interpretive rule.

22             Second, neither the APA's good cause exception nor

23    the harmless error doctrine can excuse DHS's failure to

24    follow notice-and-comment procedures in this case.

25             And, third, the government's

1    committed-to-agency-discretion argument is wrong, because

2    under controlling precedent in this Circuit, an agency never

3    has unreviewable discretion to ignore notice-and-comment

4    procedures.

5           So on the first point, the February 5th letter is

6    a legislative rule, because it fundamentally changes the

7    existing regulation that governs applications for global

8    entry.

9           8 C.F.R. Section 235 says that U.S. citizens and

10   lawful permanent residents may apply to participate in

11   global entries.

12          The regulation then requires DHS to conduct an

13   individualized risk determination on each application,

14   taking into account a number of factors listed in 8 C.F.R.

15   Section 235(b)(2).

16          And if the DHS determines that the individual

17   presented potential risk for terrorism, criminality, or is

18   otherwise not a low-risk traveler, the applicant is deemed

19   ineligible.

20          The February 5th rule turns this regulatory scheme

21   upside-down.  New Yorkers are no longer eligible to apply

22   for these programs.  That is flatly inconsistent with the

23   plain text of the regulation, which says that, "All

24   U.S. citizens and lawful permanent residents may apply to

25   participate in these programs."

1          THE COURT:  Mr. White, is that --

2          MR. WHITE:  The DHS's act --

3          THE COURT:  Mr. White, is that still true in the

4   aftermath of the amendment to the legislation that was just

5   recently passed?

6          MR. WHITE:  So our understanding of the amendment

7   to the recent legislation that was enacted on April 3rd is

8   that it does allow New York to disclose certain DMV records

9   for the precise purpose of Trusted Traveler Programs.

10          However, the government has not changed the

11   decision to ban New Yorkers in any way.  The February 5th

12   rule is still in effect, the government has attested to that

13   fact, and so, for our purposes, the case is still live and

14   there are no missed issues.

15          THE COURT:  All right.

16          MR. WHITE:  And so moving on, the action adopts --

17   the reason that this is a legislative rule is because it

18   squarely satisfies all of the D.C. Circuit definitions.

19          So it is opposite a new position that is

20   inconsistent with existing regulations, it affects the

21   substantive change in existing law or policy, and it sets

22   forth as legally binding requirement for a private party to

23   obtain a government benefit.

24          There's no dispute that prior to the issuance of

25   the February 5th letter, New Yorkers were eligible to apply

1   for Global Entry.  And because of the February 5th letter,

2   they are prohibited from doing so, and all of their

3   applications have been canceled.

4           The rule is not a general statement of policy.

5   The D.C. Circuit has made clear that the key difference

6   between a legislative rule and a policy statement is that

7   policy statements are not binding on the public or the

8   agency.  And policy statements must leave the agency and its

9   decision-makers free to exercise discretion.

10          The February 5th rule cannot be a policy statement

11  because it is binding.  It does not leave decision-makers

12  within DHS with any discretion to consider or approve a

13  New York application, even a determined "New Yorker" who

14  holds a Top Secret security clearance.

15          DHS decision-makers can't approve any applications

16  from New Yorkers, because the February 5th rule bars

17  New Yorkers from applying in the first place.

18          The rule is also not an interpretive rule.  As a

19  fallback position, the government says that the February 5th

20  rule could also be understood as the interpretive rule,

21  because it simply is interpreting the low-risk-status factor

22  in 8 C.F.R. Section 235.

23          But the low-risk-status factor is one of seven

24  disqualifying factors that DHS considers in making a risk

25  determination on individual applications.

1          The February 5th rule couldn't possibly be an

2     interpretation of that factor, because it doesn't allow DHS

3     to consider applications for New Yorkers in the first place.

4          So rather than interpret the risk-determination

5     factors, the February 5th rule changes the entire regulatory

6     scheme by excluding New Yorkers from the application process

7     altogether.

8          The February 5th rule is not an interpretive rule

9     for other reasons.  For one thing, the letter itself never

10    once quotes or cites any part of the DHS's existing

11    regulation.

12         It doesn't cite or discuss the low-risk-travel

13    factor or any of the other disqualifying factors, and that's

14    fatal, because an interpretive rule has to actually

15    interpret something.  The government's claim that the letter

16    is interpreting the low-risk traveler factor is just a post

17    hoc rationalization.

18         And for a number, the categorical determination of

19    20 million people from these programs is not an

20    interpretation of the term "low risk," because if it were,

21    DHS would have had to conclude that every single New Yorker

22    was not capable of satisfying DHS of their low-risk status,

23    including federal officials with security clearances like

24    AUSAs in the Southern District of New York, and every single

25    DHS, FBI, and CIA agent living in New York.

1            DHS clearly did not make such a conclusion in the

2    February 5th rule, because the February 5th rule is not in

3    the interpretation of the term "low risk."

4            And, finally, an interpretive rule can't change an

5    existing regulation.  But the letter here clearly did,

6    because before the letter, New Yorkers could apply, and now

7    they can't.

8            So the February 5th rule is not an interpretive

9    rule and it's not a general statement of policy.  It's a

10   legislative rule, because it's inconsistent with the

11   excessing regulation and affects the substantive policy

12   change.

13           The question for the Court then becomes whether

14   the government satisfies any exception to notice-and-comment

15   rulemaking for legislative rules.

16           So that brings me to my second point, which is

17   that neither the good-cause exception or the harmless error

18   doctrine can excuse DHS's failure to engage in

19   notice-and-comment rulemaking in this instance.

20           The government cannot invoke the good-cause

21   exception, because the plain text of the APA requires the

22   government to incorporate the good-cause finding in the rule

23   itself.

24           The D.C. Circuit has said explicitly that the

25   grounds justifying the agency's use of the good-cause

1   exception should be incorporated within the published rule,

2   which allows reviewing courts to closely examine the

3   agency's explanation as outlined in the rule.

4          And this makes perfect sense because of the

5   bedrock principle of administrative law.  The agencies must

6   justify their actions at the time they're taken.  Nowhere in

7   the February 5th rule does DHS state or explain why there

8   was good cause to not follow notice-and-comment rulemaking

9   procedures prior to taking this step.

10         And even if the government could invoke the

11  good-cause exception for the first time in court, its

12  explanation for why good cause exists would fail on the

13  merits.

14         It's settled law in the D.C. Circuit that an

15  agency can't invoke the good-cause exception when any

16  urgency is the result of the agency's own delay.

17         So the government in its brief says that

18  immediately upon enactment, New York's Green Light Law

19  precluded the thorough vetting of New York residents

20  applying for a TTP.  But New York enacted its Green Light

21  Law in June of 2019, and the government waited eight months

22  before deciding to halt all New York applications.  A notice

23  and comment and rule-making process, particularly for less

24  complex rules, generally takes less than eight months.

25         And there's also no good cause, because the

1   government was not required to approve the application of

2   any New Yorker as to whom it had a risk concern, because,

3   again, under the pre-existing regulation, DHS has the

4   authority to review each application and deny applications

5   where the individual applicant is unable to satisfy DHS of

6   his or her low-risk status.

7            And, finally, the government's contention that

8   it would be contrary to the public interest for it to accept

9   applications from people who have records with New York's

10  DMV is undermined by the fact that DHS continues to accept

11  applications for people who have records at the DMV, as long

12  as they don't live in New York.  So DHS continues to accept

13  applications for millions of former New Yorkers, as well as

14  residents of the tri-state area, in New Jersey and

15  Connecticut, and drive through New York on a regular basis.

16           So to summarize, the government can't invoke the

17  good-cause exception, because it didn't make such a finding

18  in the rule.  And even if it did, the Court has an

19  obligation to closely examine any assertion of good cause,

20  and the government's explanation of good cause here makes

21  little sense.

22           The second exception that the government invokes

23  is the prejudicial-error exception.  The government argues

24  that the Court should not vacate the February 5th rule

25  because any procedural error was harmless.

1            But the D.C. Circuit has made clear that a

2    complete failure to engage in notice-and-comment rulemaking

3    is not harmless error, and it's there that the APA's

4    rulemaking requirements would obviously be eviscerated under

5    a contrary principle.

6            It's easy to see why this is the case.  The

7    government's position that no comments could have affected

8    this decision is effectively an admission that DHS acted

9    with an unalterably closed mind and was unable or unwilling

10   to rationally consider arguments against its initial

11   position.  That is precisely the sort of agency action that

12   the APA is meant to curtail.

13           The government's position that notice-and-comment

14   rulemaking would either change the outcome is also hard to

15   square with the rule of many logical deficiencies.

16           The third and final point I'd like to make is that

17   DHS does not have unreviewable discretion to ignore

18   notice-and-comment procedures.

19           The D.C. Circuit held in *American Medical*

20   *Association against Reno* that whether the basic rulemaking

21   strictures of notice and comment apply is distinct from the

22   ultimate availability of substantive judicial review, and

23   that the APA's procedural requirements are enforceable even

24   if the underlying substantive action isn't reviewable.

25           And so what that means here is that even if the

1    substance of the government's decision to ban all

2    New Yorkers is committed to its discretion, the Court still

3    needs to decide whether the government was required to

4    follow notice-and-comment procedures in the first place.

5    And the government was required to follow these procedures,

6    because it promulgated the legislative rule when it

7    fundamentally changed how the Global Entry application

8    process works for 20 million Americans.

9         So the plaintiffs' motion for summary judgment is

10   a narrow one.  The only questions before the Court are which

11   procedures the government is supposed to follow and whether

12   it followed them.

13        Whether the government has the substantive

14   authority to take the steps that it did is not the issue

15   before the Court on this motion.  The APA requires federal

16   agencies to go through notice-and-comment procedures,

17   because it leads to smarter decision-making and ensures fair

18   treatment for regulated parties.

19        The DHS cut every corner here; because it acted

20   without observance of procedure required by law, its action

21   must be vacated.

22        If the Court has no additional questions at this

23   time, I'd like to reserve the balance of my time for

24   rebuttal.

25        THE COURT:  Mr. White, let me ask you a question:

1          Is notice and comment appropriate on issues of

2     this kind that involve national security, protection of the

3     homeland, and national-security type -- that has

4     national-security-type overtones to it?

5          MR. WHITE:  Sure.

6          So two responses to that:

7          So DHS already has the authority, under the

8     current Global Entry regulation, to deny applications from

9     individuals that it considers risky.

10          It's an issue of guidance to its employees without

11     going through notice and comment and how the certain

12     applications from New Yorkers, in the absence of DMV

13     records, as long as it allows New Yorkers to apply and

14     doesn't eliminate the discretion of its decision-makers to

15     approve RGE application.

16          And more to your point, if DHS felt that security

17     concerns warranted an imminent substantive change in that

18     regulation, such that notice-and-comment rulemaking was

19     impractical, the APA allows agencies to bypass those

20     procedures as long as the agency makes the good-cause

21     finding at the time it changes the regulation.

22          Now, that good-cause finding is, of course,

23     subject to judicial scrutiny.  But the relevant point here

24     is that the APA provides the procedural framework for how

25     federal agencies are supposed to operate in an emergency or

1    in national-security circumstances, and the government

2    disregarded that framework altogether here.

3              THE COURT:  All right.

4              You have a couple minutes left in your 15 minutes.

5    Do you have anything else you want to say?

6              MR. WHITE:  Okay.  Yes, I'd like to reserve the

7    balance of my time for rebuttal.

8              THE COURT:  Okay.  Very good.  Thank you, sir.

9              We'll hear from the government.

10             MS. ROTH:  Good afternoon, Your Honor.  Thank you,

11   and may it please the Court.

12             THE COURT:  Good afternoon.

13             MS. ROTH:  Since the inception of the pilot

14   program in 2008, the Global Entry Program contemplated CBP's

15   ongoing access to an applicant's federal, state, and local

16   criminal and other records in order for CBP to satisfy its

17   obligations to evaluate an applicant's low-risk status and

18   to otherwise determine whether or not that applicant met the

19   program's eligibility requirements.

20             When New York blocked access to DMV records that

21   CBP has used for more than a decade, CBP could no longer

22   fully vet any Global Entry applicant with a New York

23   residence.

24             The Acting Homeland Security Secretary's

25   explanation and announcement of that fact on February 5 did

not violate the Administrative Procedure Act, because the
announcement concerned a matter squarely committed to CBP's
discretion by statute and regulation.

And even if the Court decides to review
plaintiffs' procedural challenge under the APA, the
February 5 letter does not constitute a substantive rule,
and so is not subject to the APA's notice-and-comment
requirement.

I'd like to address plaintiffs' arguments,
although in a somewhat different order as they were
presented.

First, I'd like to address the effect of the Green
Light Law amendment which Your Honor asked plaintiffs'
counsel about.

And just a quick note on that, Your Honor, which
is that:  As of today, disclosure of New York's DMV data to
CBP, for the purpose of Trusted Traveler Program vetting,
has not been implemented, notwithstanding the fact that the
amendment, on its face, appears to authorize its sharing for
that purpose.

So, in other words, still today, CBP does not have
access to New York's DMV data, and, therefore, cannot resume
processing applications from New York residents, for the
same reasons as the Acting Secretary set forth in his
February 5th letter.

1          THE COURT:  So was that legislative amendment

2    signed into law by the governor up in New York?

3          MS. ROTH:  Yes, Your Honor.  My understanding is

4    that that was signed and enacted -- as in signed by the

5    governor -- on April 3rd.

6          THE COURT:  Okay.  Thank you.

7          You may proceed.

8          MS. ROTH:  I'd first like to address plaintiffs'

9    argument that this Court can review the procedural challenge

10   under the APA, in spite of the fact that the government

11   argues that this area is not judicially reviewable because

12   it is committed to agency discretion.  And in that regard,

13   Your Honor, I think that plaintiffs have somewhat

14   oversimplified and confused the state of the law in this

15   area.

16          So, for one, APA's -- the APA's rule-making

17   requirement does not apply here, even if the Court concludes

18   that this area is not committed to agency discretion,

19   because the February 5th decision is not a substantive rule.

20   It's either a general statement of policy or an interpretive

21   rule.  And in a moment or two, I'll address those arguments.

22          But, Your Honor, the fact that this is committed

23   to agency discretion does mean that this decision by the

24   Acting Secretary is not reviewable, notwithstanding

25   plaintiffs' procedural challenge.

1          And that fact bears out, I think, best in the

2     Supreme Court decision of *Lincoln v. Vigil* from 1993, where

3     the Supreme Court addressed whether or not a challenge to

4     the Indian Health Service decision to discontinue in its

5     entirety at that time what was called the Indian Children's

6     Program, which was a program designed to serve the

7     healthcare needs of children on Native American

8     reservations.

9          In analyzing that challenge, the Supreme Court

10    addressed both a procedural challenge that the Indian Health

11    Service failed to conduct notice-and-comment rulemaking, as

12    well as the argument that that decision was committed to the

13    agency's discretion, and, therefore, not reviewable under

14    the APA.

15         And the Supreme Court's analysis there, I think,

16    demonstrates how those two questions are necessarily

17    interrelated, because once the Court determines that the

18    decision is one that is committed to agency discretion,

19    under the APA, there is no longer a cause of action for this

20    Court to review.

21         And so when the Supreme Court made that similar

22    conclusion in *Lincoln v. Vigil*, it followed and stood to

23    reason, then, that the -- there was no notice-and-comment

24    rulemaking requirement because the decision was not

25    reviewable.

1          And I think that this bears out as well in the

2     structure of the APA, because, as Your Honor well knows,

3     Section 701(a)(2) of the APA provides that a cause of action

4     under the APA is completely withdrawn any time an agency

5     action is committed to agency discretion by law.

6          In other words, if plaintiffs here -- if the

7     Secretary -- the Acting Secretary's decision is committed to

8     agency discretion and the Court so finds, there is no cause

9     of action under the APA, including a cause of action for a

10    procedural challenge.

11         By its terms, the APA withdraws that cause of

12    action for the entire 700 chapter [sic] of the APA, which,

13    of course, would include the cause of action plaintiffs have

14    brought here under chapter 704.

15         But to bring it back more to the substance of the

16    argument here, the -- and as Judge Howell found in a very

17    similar case in this District, whether or not someone meets

18    the eligibility requirements of Global Entry is decidedly

19    committed to agency discretion.

20         And Judge Howell pointed out in that regard,

21    Your Honor, that the IRTPA, which is the governing statute

22    here, is silent as to the criteria that CBP should develop

23    and use for approving applicants.

24         And for that reason, there is no judicially

25    manageable standard for the courts to apply, in a case where

1    plaintiff is challenging whether or not individuals are

2    eligible for Global Entry, which is, of course, what

3    plaintiffs are challenging here, just dressed up in a

4    different form.

5           And I think it therefore follows that if the Court

6    is to find here that this matter is submitted to agency

7    discretion, that's the end of the case.  Whether or not the

8    agency was required to go through notice and comment is no

9    longer a reviewable question, because, of course, the

10   agency's decision itself is not reviewable.

11          But, again, Your Honor, even if Your Honor agrees

12   with the plaintiff that the February 5th decision was a rule

13   requiring the agency to comply with the notice-and-comment

14   requirement, the government argues that this decision is

15   essentially the quintessential statement of general policy

16   for interpretive rule, and, therefore, not subject to the

17   APA's notice-and-comment requirements.

18          So I'll start with the general statements of

19   policy.  As my opposing counsel cited a few minutes ago, a

20   general statement of policy explains how an agency will

21   enforce a statute or regulation and how it will exercise its

22   discretion.

23          The February 5th decision does precisely those

24   things in a prospective manner.  Unlike and contrary to what

25   my opposing counsel just said, the February 5th letter did

1    not have a present or binding effect or deprive CBP

2    decision-makers of their discretion.  It was shutting off of

3    the DMV-record information that caused the Acting Secretary

4    to make an evaluation and reach a conclusion which was

5    announced in the letter, which it simply explained to the

6    DMV officials and any reader of the letter why it is CBPs

7    can no longer determine the eligibility of applicants with

8    New York residents, because they can no longer conceit their

9    vetting process, which requires that the individual

10   applicants satisfy CBP that he or she is a low-risk

11   individual, in addition to a whole host of other

12   requirements that are set forth in the regulations,

13   including, but not limited to, whether or not the applicant

14   is being truthful and honest in their application materials

15   as to any prior violations or issues they've had as criminal

16   law, as well as whether or not the applicant has a federal,

17   state, or local criminal history of any kind.

18          So the letter simply announces the fact that,

19   moving forward, CBP can no longer do its due diligence to

20   make that determination because of the fact that it lacks

21   the information it needs to do so.

22          And that's very much consistent with the case law

23   in this area, and, again, is very analogous to the facts as

24   entered in *Lincoln v. Vigil*, where the Court found there the

25   Indian Health Service had not modified the eligibility

1    standards for who was able to receive care under the

2    Children's Health Program; rather, it had the discretion to

3    shut down that program completely.  Of course, that's not

4    the case here:  The Global Entry Program still exists.

5            But critically, what the agency has not done is in

6    any way change its eligibility standard, which -- the

7    development of which were submitted to the agency's

8    discretion to develop and promulgate and which the agency

9    continues to maintain today.

10           And further, that announcement by the Acting

11   Secretary does not deprive CBP officials of their

12   discretion.  They retain their discretion in every other

13   way.  But in this one respect, it's the New York law that is

14   preventing CBP actors from getting to the point where they

15   can exercise their discretion.

16           And respectfully, Your Honor, in none of the state

17   cases that plaintiffs cite or rely on for this part of their

18   argument do they point to a case involving a similar set of

19   facts where an agency is essentially in a reactive posture,

20   having to assess and evaluate how the action from other

21   outside parties affect the agency's own ability to conduct

22   its operations and its mission, which is, of course, what

23   the case is here.

24           Moving, on, Your Honor, whether or not the Court

25   agrees that the February 5th decision was a general

1    statement of policy, it was also certainly an interpretive

2    rule.

3              As defined by the D.C. Circuit in the *Orengo* case

4    cited in our briefs, an interpretive rule is a statement

5    seeking to interpret a statutory or regulatory term.  And,

6    of course, the February 5th letter, on its face, plainly

7    defines and adds interpretation to how the agency

8    understands the term "low risk" from the statute.

9              You know, my opposing counsel points out that the

10   letter doesn't cite to the regulation.  Of course, the fact

11   that there's no legal citation in the letter, we think

12   doesn't make any difference.  It was an announcement and an

13   explanation to other officials, not a public tool, precisely

14   because the Acting Secretary was not publishing a rule with

15   the force of law, he was setting forth the agency's

16   interpretation of how the cut-off of the DMV records

17   affected DHS's and CBP's ability to continue their

18   operation.

19             And I think the *Orengo* case is further important

20   on this point, because there, the D.C. Circuit pointed out

21   that only where a second rule, a second-in-time rule

22   repudiates or is irreconcilable with the prior rule is the

23   second rule a legislative one, and/or the mere absence of a

24   prior definitive statement is not required.

25             Now, here, plaintiffs argue that the February 5th

1    decision somehow repudiates New Yorkers' prior eligibility

2    under the regulations to apply for and be approved for a

3    Global Entry membership, but that is decidedly not the case.

4          The fact that New Yorkers can no longer satisfy,

5    as required under the regulations, their obligation that

6    they are low-risk individuals, is the issue.

7          And the eligible requirements haven't changed at

8    all.  It is simply the fact that whether, on an individual

9    basis or collective basis, New York residents can no longer

10   set aside their burden to show their low-risk status and CBP

11   cannot access the information that it has determined that it

12   needed in order to make that determination.

13         But, of course, the interpretive-rule concept kind

14   of begins and ends with the four factors set forth by the

15   D.C. Circuit in the *American Mining Congress* case cited to

16   you in our briefs, in which I think plaintiff acknowledges

17   the case on point.  And those four factors, as we set forth

18   in our brief, all clearly evince the fact that this is an

19   interpretive rule.

20         First, there is otherwise an adequate basis, legal

21   basis for the action that the Acting Secretary has decided,

22   because the regulations are clearly -- determination of

23   eligibility is clearly one that is both the discretion of

24   CBP decision-makers, and, in their assessment, they no

25   longer have the information they need in order to conduct

1   the vetting that they're required to conduct, and so the

2   regulations certainly supply that authority.

3          The Acting Secretary, of course, did not publish

4   this decision in the Code of Federal Regulations.  The

5   Acting Secretary did not explicitly invoke any legislative

6   authority in the letter.

7          And, finally, as I argued just a minute ago, the

8   February 5th decision did not effectively amend a prior

9   legislative rule.  In fact, it has left in place perfectly

10  intact and with no change the Global Entry eligibility

11  requirements as set forth in the binding regulation.

12         THE COURT:  As a practical matter -- Ms. Roth, as

13  a practical matter, what would the notice and comment, if it

14  had been put out for the notice and comment, what possible

15  value could it have had to enforcing the law as is currently

16  constructed?

17         MS. ROTH:  Well, I thank Your Honor for that

18  question, because I think it raises the critical last point

19  I was going to make about harmless error, which is that

20  notice and comment would have had no effect on the Acting

21  Secretary's decision, but not because, as plaintiffs argue,

22  because the agency is somehow being irrationally

23  close-minded; but, rather, a fact in the real-world change.

24  That fact was the fact that CBP could no longer access

25  records that it's relied upon accessing for 12 years in

1    creating and enforcing and carrying out this program.

2          And whether or not the agency conducted

3    notice-and-comment rulemaking, the only thing that can

4    change -- the only external factor that would change the

5    agency's assessment of that fact is the resumption of access

6    to those records that it needs.

7          Now, of course, the agencies did conduct a

8    searching and thorough internal process for deciding how the

9    loss of that information affected its operations and its

10   ability to carry out its obligations under statute and

11   regulation.

12         But notice and comment would have had no effect on

13   that, because, at the end of the day, CBP does not have

14   access to the information that CBP says that it needs.

15         And let me say another -- a few words about a

16   good-cause basis for forgoing notice and comment.

17         If the Court thinks that the Acting Secretary's

18   decision is a legislative rule, the government would request

19   that the Court grant leave to the Department to issue a

20   statement of good cause before deciding that the decision

21   unlawfully violated the APA's notice-and-comment

22   requirement.

23         We think that there is -- certainly, the agency

24   could do so in this instance for reasons that we've set

25   forth in our briefing.

1          But let me just also point out, Your Honor, that

2    Courts have recognized that the failure to include an

3    explicit good-cause statement as a "technical violation" can

4    be overlooked where the good cause is evident.  And I'd

5    refer the Court to the *Nader v. Sawhill* case, that's

6    *N-a-d-e-r v. S-a-w-h-i-l-l*, 514 F.2d 1064.  That's a 1975

7    case.

8          And here, we think that the February 5th letter

9    certainly invokes a good-cause finding in any number of

10   ways, with repeated and several times referring to the need

11   for DHS to take immediate action to ensure that DHS's

12   efforts to protect the homeland are not compromised,

13   explaining that the DMV records are operationally critical

14   for DHS's efforts to keep the nation secure and the need for

15   DHS to immediately take the following prospective action.

16         So we would just respectfully request the

17   opportunity to issue a good-cause statement, if Your Honor

18   does agree with plaintiffs that this is a legislative rule.

19         Of course, the DHS did not issue such a statement,

20   because it was not promulgating a legislative rule, it was

21   setting forth a decision committed to its agency discretion

22   or which otherwise was just a policy statement or

23   interpretive rule.  So we would request that opportunity.

24         And, finally, Your Honor, on the point of harmless

25   error, as I mentioned before, we think that it's clear that

1    any period of notice and comment would not change the nature

2    of the announcement here, because whether or not the agency

3    receives comments from the public, one critical piece is

4    that CBP does not have access to the information it needs.

5              But finally, Your Honor, if -- to the extent that

6    your government [sic] is not persuaded by that argument, we

7    would request that you consider remanding here without

8    vacatur, again, to allow the agency an opportunity to issue

9    a good-cause statement.

10             The D.C. Circuit, in the *Worldcom versus FCC* case,

11   found that where there's a nontrivial likelihood that an

12   agency could justify a rule on remand, vacatur is not

13   appropriate.  And we'd ask that that same analysis apply

14   here.

15             And on that note, Your Honor, I just want to

16   respond:  You asked a question to my opposing counsel about

17   whether or not the fact that it's a national security of

18   Homeland Defense related decision should affect the

19   good-cause argument.

20             And opposing counsel made reference to the fact

21   that the Department took a period of eight months to make

22   its decision here.  So for a number of reasons, we think

23   that that line of argument is not -- is both wrong and

24   certainly does not fit the letter of the law.

25             First, the law was enacted in mid-December and the

1    Acting Secretary announced its decision of the effect of

2    that law in February.  So really, a period of less than 60

3    days.

4            But even assuming that that was the eight-month

5    period that plaintiffs suggest and which we don't agree

6    with, the Court should look to the *Jifry versus FAA* case out

7    of the D.C. Circuit, which we think is very analogous.

8            In that case, TSA and FAA promulgated, without

9    notice and comment, new rules affecting airmen certificates.

10   And these were rules that those agencies had developed in

11   the aftermath of the 9/11 attacks.  And the Court found

12   there that good cause excused those agencies from going

13   through APA's notice-and-comment rulemaking, because they

14   were security assessments that those agencies made in the

15   aftermath of 9/11 and so, you know, the timing was excused.

16           Now, that was two years after the attacks that the

17   agencies had promulgated these new rules.  And I think it's

18   clear in that case that the D.C. Circuit recognized that a

19   period of two years or more was understandable in light of

20   the time period that it took the agencies to evaluate,

21   you know, the various vulnerabilities and opportunities to

22   prevent further security threats in that interim time.

23           And I think that the less-than-60 days that the

24   Department took here is obviously well short of that, and

25   I think is a -- for that reason, the plaintiffs' emphasis on

1    the period of time that it took is really -- essentially a

2    strawman and does not squarely address the arguments

3    defendants put forward about why it was that good cause does

4    exist here, where the agency was asking, after evaluating

5    its options and impact of the removal of access of this

6    information, why it needed to take the action that it took.

7               THE COURT:  All right.  Your time is expired.

8    Thank you very much.

9               We'll hear rebuttal.

10              MR. WHITE:  Thank you, Your Honor.

11              The first point I'd like to make is a quick

12   factual point about when the Green Light Law took effect.

13              So the Green Light Law was enacted on June 17th,

14   2019.  The government acknowledged this in its brief on

15   page 6.

16              I think the date that the government is referring

17   to in December is when the Green Light Law took effect.  But

18   the Law itself was signed into law in June, so DHS was well

19   aware that this became an enacted law back then.

20              The first substantive point that I'd like to

21   address is on good cause.  So the government cites to

22   *Nader v. Sawhill* for the proposition that the government

23   doesn't need to invoke the good-cause exception in the rule

24   itself.

25              But that case is distinguishable for a couple of

1    reasons.  First, it's not a D.C. Circuit case, it's a case

2    from the Temporary Emergency Court of Appeals, which was

3    created in the early 1970s.  It hears cases exclusively

4    arising from the Economic Stabilization Act of 1970.  And

5    it's since been abolished.

6         More importantly, the D.C. Circuit has said

7    repeatedly in cases that post-date *Nader*, that the

8    government must invoke the good-cause exception in the rule,

9    and those cases are cited in our brief.  And, of course, the

10   text of the APA itself makes very clear that the good-cause

11   finding must be made in the rule itself.

12        And, finally, that case is distinguishable on its

13   facts, because the agency in that case actually did invoke

14   the good-cause exception in the rule.  The dispute was over

15   the adequacy of the agency's explanation, which it did not

16   include in the rule.

17        That's a pretty significant difference, because,

18   in this case, DHS didn't bother to invoke good cause at all

19   when it issued the February 5th letter.  And so trying to

20   invoke good cause here for the first time in court -- which

21   is an impermissible post hoc justification.

22        One point I'd also like to make on whether there

23   should be a remand without vacatur for good-cause finding --

24   so the government hasn't requested remand without vacatur in

25   its brief.  This is the first time it's asked for this.

1          But more importantly, when considering remand

2    without vacatur, the most important factor to keep in mind

3    is the seriousness of the rule's deficiencies.  And it's

4    settled law in the D.C. Circuit that an agency cannot invoke

5    the good-cause exception when the urgency is the result of

6    the agency's own delay.  And as we've discussed, New York

7    enacted this Green Light Law back in June of 2019, admitted

8    eight months before issuing the letter.

9          Turning to the government's argument on whether

10   this is committed to agency discretion:

11         So the government's argument is plainly foreclosed

12   by both *Lincoln versus Vigil* and the D.C. Circuit's decision

13   in *American Medical Association versus Reno.*

14         So the Government says that under *Lincoln versus*

15   *Vigil*, the Supreme Court treated the procedural and

16   substantive questions as related.  But that's not the case.

17         What the Supreme Court said, and I'm quoting

18   directly from the opinion, is that, "The question of whether

19   the government was required to abide by notice-and-comment

20   provisions is quite apart from the matter of substantive

21   reviewability."  That's from *Lincoln versus Vigil.*

22         And in the D.C. Circuit opinion in *American*

23   *Medical Association versus Reno,* says, and I'm quoting

24   again, that, "Under the APA, the ultimate availability of

25   substantive judicial review is distinct from the question of

1   whether the basic rule-making strictures of notice and

2   comment and reasoned explanation apply."  So these are two

3   separate questions.

4           So one other point I want to make is that even if

5   that were not the case, the government's decision to ban all

6   New Yorkers from this program is not committed to its

7   discretion by law.

8           The committed-to-agency-discretion-by-law

9   exception is very narrow.  It typically arises in the

10  non-enforcement context, where statutes and regulations

11  typically don't provide factors for courts to look at in

12  deciding whether an agency should or should not take an

13  enforcement action.

14          But here, there's plenty of law to look at in

15  determining whether the agency broke the law here when it

16  made this -- when it promulgated the February 5th rule.

17          So, for example, the original statute says that,

18  "Programs must include as many participants as practicable."

19  And the governing regulations here on 8 C.F.R. Section 235

20  says that, "Individuals may apply for these programs."  And,

21  again, the February 5th rule is contrary to that regulation

22  by saying that New Yorkers can no longer apply.

23          And, of course, the APA's arbitrary and capricious

24  provision itself provides a standard for addressing the

25  agency's action.  So there's plenty of law for the agency to

1    apply hear.

2            And then moving quickly to the government's

3    responses on some of the other issues:

4            So on the policy-statement question:  The

5    government is saying that this is a policy statement because

6    it explains how the agency will express -- I'm sorry, will

7    exercise its broad enforcement discretion.  But the

8    government has entirely ignored the rest of the definition

9    of a policy statement.

10           So the D.C. Circuit has explained, and I'm

11   quoting, again, here from the *Association of Flight*

12   *Attendants v. Huerta* case from 2015 that policy statements

13   are not binding on the public:  "The agency retains the

14   discretion and the authority to change its position in any

15   specific case."

16           So there's no dispute here about what the

17   February 5th rule -- the February 5th letter does.  It

18   doesn't leave DHS decision-makers with any discretion to

19   consider a New Yorker's application.

20           So the result of the letter, any New York

21   application that's submitted for Global Entry is

22   automatically denied.  There's absolutely no discretion for

23   DHS decision-makers to consider the application in any way.

24   And it's simply not a policy statement under controlling

25   D.C. Circuit precedent.

1          And on the interpretive rule front, the important

2     thing to realize here is that the February 5th rule is

3     directly contrary to the plain text of 8 C.F.R. Section 235.

4          So quoting directly from the regulation:  "All

5     U.S. citizens and lawful permanent residents may apply for

6     these programs."  And under the February 5th rule,

7     New Yorkers are no longer able to apply at all.  That is a

8     substantive change in the existing regulation.

9          The last thing I would add is that a ruling for

10    the plaintiffs would not in any way interfere with the

11    government's ability to respond to national security

12    concerns, because, again, under the existing regulation, DHS

13    employees have the ability to reject any applicant as to

14    whom it has a risk concern.

15         And, again, if DHS thinks that national security

16    concerns would require it to modify the regulation governing

17    how these applications are processed, it has the authority

18    to bypass administrative -- notice and comment and

19    rule-making procedures, as long as it issues a good-cause

20    finding at the time.  And, again, if the APA sets this

21    procedural framework for how the government is supposed to

22    operate in emergencies, it's entirely disregarded that

23    framework here.

24         One very last point that I would want to make is

25    that the government argues that this isn't a legislative

```
 1   rule, because it was actually -- the shutting off of
 2   New York DMV records that prevented New Yorkers from
 3   applying, the letter simply announces that, moving forward,
 4   CBP can't because of due diligence.  But this is obviously
 5   untrue, because the law was passed eight months before the
 6   letter, and New Yorkers were applying and being approved
 7   while the law was in effect.
 8              Two other points, actually.
 9              One thing that's worth mentioning is, the
10   government has argued that public --
11              THE COURT:  You only have one minute left.
12              Mr. White --
13              MR. WHITE:  I'm sorry, can you hear me?
14              THE COURT:  Mr. White, you have one minute left.
15              MR. WHITE:  Okay.  Certainly.
16              So two quick points:
17              One is that the government's argument that public
18   comment wouldn't have changed the rule is hard to square.
19   And the reason that's the case is because there are at least
20   eight other states that also restrict access to DMV records,
21   and those states have not similarly faced restrictions from
22   DHS.
23              So during the public-comment procedure, the
24   government would attempt to explain why restrictions on
25   New Yorkers are appropriate, while restrictions on other
```

1    state residents in states that similarly have restrictions

2    on DMV records is not appropriate.

3              So I think because of that, is seems pretty likely

4    that had the agency had to go back to notice-and-comment

5    rulemaking, there would have been important changes to the

6    rule.

7              So unless the Court has any further questions,

8    I think I've hit the highlights.

9              THE COURT:  Thank you, Counsel.  Very well briefed

10   and very well argued.

11             So I can't promise you when you'll get an opinion,

12   but I'll do my best to get it to you quickly.

13             And if there's any further updates on the state of

14   New York's legislation and its being implemented, please

15   bring them to the Court's attention as soon as you can.

16             Thank you very much.  Have a great day.

17             MR. WHITE:  Thank you.

18             MS. ROTH:  Thank you, Your Honor.

19             (Proceedings concluded at 4:01 p.m.)

20

21

22

23

24

25

C E R T I F I C A T E

   I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.

   Please note:  This hearing occurred during
the COVID-19 pandemic and is therefore subject to the
technological limitations of court reporting remotely.


Date:__June 23, 2020_____    /S/__William P. Zaremba_____

            William P. Zaremba, RMR, CRR

**DEPUTY CLERK: [2]**
3/2 3/14
**MR. WHITE: [12]** 3/10
4/2 4/7 6/2 6/6 6/16
14/5 15/6 30/10 36/13
36/15 37/17
**MS. ROTH: [7]** 3/16
15/10 15/13 17/3 17/8
25/17 37/18
**THE COURT: [16]**
3/18 4/6 6/1 6/3 6/15
13/25 15/3 15/8 15/12
17/1 17/6 25/12 30/7
36/11 36/14 37/9

/

**/S [1]** 38/10

**1**

**1064 [1]** 27/6
**11 [2]** 29/11 29/15
**1100 [1]** 1/21
**11204 [1]** 1/21
**12 [1]** 25/25
**15 [1]** 15/4
**17th [1]** 30/13
**19 [1]** 38/6
**1970 [1]** 31/4
**1970s [1]** 31/3
**1975 [1]** 27/6
**1993 [1]** 18/2

**2**

**20 [5]** 3/22 3/24 4/8
8/19 13/8
**20-445 [1]** 1/4 3/4
**20001 [2]** 1/15 2/5
**20005 [1]** 1/22
**2008 [1]** 15/14
**2015 [1]** 34/12
**2019 [3]** 10/21 30/14
32/7
**202 [2]** 1/22 2/6
**202-942-6345 [1]** 1/16
**2020 [2]** 1/5 38/10
**22 [1]** 1/5
**23 [1]** 38/10
**235 [5]** 5/9 5/15 7/22
33/19 35/3

**3**

**3249 [1]** 2/6
**333 [1]** 2/4
**354-3249 [1]** 2/6
**3:14 [1]** 1/6
**3rd [2]** 6/7 17/5

**4**

**445 [2]** 1/4 3/4
**4:01 [1]** 37/19

**5**

**5108 [1]** 1/22
**514 [1]** 27/6
**514-5108 [1]** 1/22
**5th [33]** 5/5 5/20 6/11
6/25 7/1 7/10 7/16 7/19

10/7 11/24 16/25 17/19
20/12 20/23 20/25
22/25 23/6 23/25 25/8
27/8 31/19 33/16 33/21
34/17 34/17 35/2 35/6

**6**

**60 [2]** 29/2 29/23
**601 [1]** 1/15
**6345 [1]** 1/16
**6503 [1]** 2/5

**7**

**700 [1]** 19/12
**701 [1]** 19/3
**704 [1]** 19/14

**9**

**9/11 [2]** 29/11 29/15

**A**

**abide [1]** 32/19
**ability [5]** 22/21 23/17
26/10 35/11 35/13
**able [2]** 22/1 35/7
**abolished [1]** 31/5
**about [7]** 16/14 25/19
26/15 28/16 30/3 30/12
34/16
**above [1]** 38/4
**above-titled [1]** 38/4
**absence [2]** 14/12
23/23
**absolutely [1]** 34/22
**accept [3]** 11/8 11/10
11/12
**access [15]** 15/15
15/20 16/22 24/11
25/24 26/5 26/14 28/4
30/5 36/20
**accessing [1]** 25/25
**account [1]** 5/14
**acknowledged [1]**
30/14
**acknowledges [1]**
24/16
**act [4]** 4/14 6/2 16/1
31/4
**acted [2]** 12/8 13/19
**Acting [13]** 15/24
16/24 17/24 19/7 21/3
22/10 23/14 24/21 25/3
25/5 25/20 26/17 29/1
**action [19]** 3/4 6/16
12/11 12/24 13/20
18/19 19/3 19/5 19/9
19/9 19/12 19/13 22/20
24/21 27/11 27/15 30/6
33/13 33/25
**actions [1]** 10/6
**actors [1]** 22/14
**actually [4]** 8/14 31/13
36/1 36/8
**add [1]** 35/9
**addition [1]** 21/11
**additional [1]** 13/22
**address [6]** 16/9 16/12
17/8 17/21 30/2 30/21

addressed [2] 5/11 5/22
18/10
**addressing [1]** 33/24
**adds [1]** 23/7
**adequacy [1]** 31/15
**adequate [1]** 31/24
**administrative [4]** 4/13
10/5 16/1 35/18
**admission [1]** 12/8
**admitted [1]** 32/7
**adopts [1]** 6/16
**advanced [1]** 4/12
**affect [2]** 22/21 28/18
**affected [3]** 12/7 23/17
26/9
**affecting [1]** 29/9
**affects [2]** 6/20 9/11
**after [2]** 29/16 30/4
**aftermath [3]** 6/4 29/11
29/15
**afternoon [5]** 3/2 3/3
3/4 15/10 15/12
**again [10]** 11/3 20/11
21/23 28/8 32/24 33/21
34/11 35/12 35/15
35/20
**against [2]** 12/10 12/20
**agencies [10]** 10/5
13/16 14/19 14/25 26/7
29/10 29/22 29/24
29/17 29/20
**agency [41]**
**agency's [12]** 9/25
10/3 10/16 18/13 20/10
22/7 22/21 23/15 26/5
31/15 32/6 33/25
**agent [1]** 8/25
**ago [2]** 20/19 25/7
**agree [2]** 27/18 29/5
**agrees [2]** 20/11 22/25
**aided [1]** 2/7
**airmen [1]** 29/9
**al [3]** 1/3 1/6 3/5
**all [16]** 3/18 4/17 5/23
6/15 6/18 7/2 10/22
13/1 15/3 24/8 24/18
30/7 31/18 33/5 35/4
35/7
**All right [2]** 3/18 6/15
**allow [3]** 6/8 8/2 28/8
**allows [3]** 10/2 14/13
14/19
**already [1]** 14/7
**also [8]** 7/18 7/20
10/25 12/14 23/1 27/1
31/22 36/20
**although [1]** 16/10
**altogether [2]** 8/7 15/2
**amend [1]** 25/8
**amendment [5]** 6/4 6/6
16/13 16/19 17/1
**American [5]** 12/19
18/7 24/15 32/13 32/22
**Americans [1]** 13/8
**analogous [2]** 21/23
29/7
**analysis [2]** 18/15
28/13

analyzing [1] 18/9
**announced [3]** 4/10
21/5 29/1
**announcement [5]**
15/25 16/2 22/10 23/12
28/2
**announces [2]** 21/18
36/3
**another [1]** 26/15
**any [28]** 6/11 7/12 7/15
8/10 8/13 9/14 10/15
11/2 11/19 11/25 15/22
19/4 21/6 21/15 21/17
22/6 23/12 25/5 27/9
28/1 34/14 34/18 34/20
34/23 35/10 35/13 37/7
37/13
**anything [1]** 15/5
**APA [19]** 4/19 9/21
12/12 13/15 14/19
14/24 16/5 17/10 18/14
18/19 19/2 19/3 19/4
19/9 19/11 19/12 31/10
32/24 35/20
**APA's [10]** 4/22 12/3
12/23 16/7 17/16 17/16
20/17 26/21 29/13
33/23
**apart [1]** 32/20
**Appeals [1]** 31/2
**APPEARANCES [2]**
1/12 2/1
**appears [1]** 16/19
**applicant [7]** 5/18 11/5
15/18 15/22 21/13
21/16 35/13
**applicant's [2]** 15/15
15/17
**applicants [3]** 19/23
21/7 21/10
**application [11]** 5/13
7/13 8/6 11/1 11/4 13/7
14/15 21/14 34/19
34/21 34/23
**applications [14]** 5/7
7/3 7/15 7/25 8/3 10/22
11/4 11/9 11/11 11/13
14/8 14/12 16/23 35/17
**apply [17]** 5/10 5/21
5/24 6/25 9/6 12/21
14/13 17/11 19/25 24/2
28/13 33/2 33/20 33/22
34/1 35/5 35/7
**applying [6]** 4/8 4/18
7/17 10/20 36/3 36/6
**appropriate [4]** 14/1
28/13 36/25 37/2
**approve [4]** 7/12 7/15
11/1 14/15
**approved [1]** 24/2 36/6
**approving [1]** 19/23
**April [2]** 6/7 17/5
**arbitrary [1]** 33/23
**are [22]** 5/21 6/14 7/2
7/7 12/23 13/10 14/25
18/16 20/1 20/3 21/12
24/6 24/22 27/12 27/13
31/9 33/2 34/13 35/7

35/17 36/19 36/25
**area [5]** 11/14 17/11
17/15 17/18 21/23
**argue [2]** 23/25 25/21
**argued [3]** 25/7 36/10
37/10
**argues [4]** 11/23 17/11
20/14 35/25
**argument [12]** 3/19 5/1
17/9 18/12 19/16 22/18
28/6 28/19 28/23 32/9
32/11 36/17
**arguments [4]** 12/10
16/9 17/21 30/2
**arises [1]** 33/9
**arising [1]** 31/4
**ARNOLD [2]** 1/14 3/11
arnoldporter.com [2]
1/17 1/18
**as [50]**
**aside [1]** 24/10
**ask [2]** 13/25 28/13
**asked [3]** 16/13 28/16
31/25
**asking [1]** 30/4
**assertion [1]** 11/19
**assess [1]** 22/20
**assessment [2]** 24/24
26/5
**assessments [1]** 29/14
**Association [4]** 12/20
32/13 32/23 34/11
**assuming [1]** 29/4
**attacks [2]** 29/11 29/16
**attempt [1]** 36/24
**Attendants [1]** 34/12
**attention [1]** 37/15
**attested [1]** 6/12
**AUSAs [1]** 8/24
**authority [1]** 11/4
13/14 14/7 25/2 25/6
34/14 35/17
**authorize [1]** 16/19
**automatically [1]**
34/22
**availability [2]** 12/22
32/24
**Ave [1]** 1/15
**Avenue [1]** 2/4
**aware [1]** 30/19

**B**

**back [4]** 19/15 30/19
32/7 37/4
**balance [2]** 13/23 15/7
**ban [4]** 4/17 6/11 13/1
33/5
**bars [1]** 7/16
**basic [2]** 12/20 33/1
**basis [6]** 11/15 24/9
24/9 24/20 24/21 26/16
**be [11]** 7/10 7/20 8/1
10/1 11/8 12/4 13/21
24/2 27/4 31/11 33/6
**bears [2]** 18/1 19/1
**became [1]** 30/19
**because [51]**
**becomes [1]** 9/13

**B**
bedrock [1] 10/5
been [5] 7/3 16/18 25/14 31/5 37/5
before [9] 1/10 9/6 10/22 13/10 13/15 26/20 27/25 32/8 36/5
begins [1] 24/14
behalf [2] 3/10 3/16
being [4] 21/14 25/22 36/6 37/14
benefit [1] 6/23
best [2] 18/1 37/12
between [1] 7/6
binding [6] 6/22 7/7 7/11 21/1 25/11 34/13
blocked [1] 15/20
both [4] 18/10 24/23 28/23 32/12
bother [1] 31/18
Branch [1] 1/20
brief [5] 10/17 24/18 30/14 31/9 31/25
briefed [1] 37/9
briefing [1] 26/25
briefly [1] 4/15
briefs [2] 23/4 24/16
bring [2] 19/15 37/15
brings [1] 9/16
broad [1] 34/7
broke [1] 33/15
brought [1] 19/14
burden [1] 24/10
bypass [2] 14/19 35/18

**C**
C.F.R [5] 5/9 5/14 7/22 33/19 35/3
call [1] 3/23
called [1] 18/5
can [15] 3/21 4/23 9/18 17/9 21/7 21/8 21/19 22/15 24/4 24/9 26/3 27/3 33/22 36/13 37/11
can't [7] 7/15 9/4 9/7 10/15 11/16 36/4 37/11
canceled [1] 7/3
cannot [5] 7/10 9/20 16/22 24/11 32/4
capable [1] 8/22
capricious [1] 33/23
care [1] 22/1
carry [1] 26/10
carrying [1] 26/1
case [32] 4/24 6/13 12/6 19/17 19/25 20/7 21/22 22/4 22/18 22/23 23/3 23/19 24/3 24/15 24/17 27/5 27/7 28/10 29/6 29/8 29/18 30/25 31/1 31/1 31/12 31/13 31/18 32/16 33/5 34/12 34/15 36/19
cases [4] 22/17 31/3 31/7 31/9
categorical [1] 8/18
cause [41]
caused [1] 21/3

CBP [3] 15/21 16/17 16/21 19/22 21/1 21/10 21/19 22/11 22/14 24/10 24/24 25/24 26/13 26/14 28/4 36/4
CBP's [3] 15/14 16/2 23/17
CBPs [1] 21/6
certain [2] 6/8 14/11
certainly [6] 23/1 25/2 26/23 27/9 28/24 36/15
certificates [1] 29/9
Certified [1] 2/3
certify [1] 38/2
CHAD [2] 1/6 3/5
challenge [7] 16/5 17/9 17/25 18/3 18/9 18/10 19/10
challenging [2] 20/1 20/3
change [14] 4/10 6/21 9/4 9/12 12/14 14/17 22/6 25/10 25/23 26/4 26/4 28/1 34/14 35/8
changed [4] 6/10 13/7 24/7 36/18
changes [4] 5/6 8/5 14/21 37/5
chapter [2] 19/12 19/14
children [1] 18/7
Children's [2] 18/5 22/2
CIA [1] 8/25
Circuit [19] 5/2 6/18 7/5 9/24 10/14 12/1 12/19 23/3 23/20 24/15 28/10 29/7 29/18 31/1 31/6 32/4 32/22 34/10 34/25
Circuit's [1] 32/12
circumstances [1] 15/1
citation [1] 23/11
cite [3] 8/12 22/17 23/10
cited [4] 20/19 23/4 24/15 31/9
cites [2] 8/10 30/21
citizens [3] 5/9 5/24 35/5
Civil [2] 1/20 3/4
claim [1] 8/15
clear [6] 4/13 7/5 12/1 27/25 29/18 31/10
clear-cut [1] 4/13
clearance [1] 7/14
clearances [1] 8/23
clearly [5] 9/1 9/5 24/18 24/22 24/23
close [1] 25/23
close-minded [1] 25/23
closed [1] 12/9
closely [2] 10/2 11/19
Code [1] 25/4
colleague [2] 3/9 3/12

COLUMBIA [1] 1/1
comment [39]
comments [2] 12/7 28/3
committed [15] 5/1 13/2 16/2 17/12 17/18 17/22 18/12 18/18 19/5 19/7 19/19 27/21 32/10 33/6 33/8
committed-to-agency-discretion [1] 5/1
complete [1] 12/2
completely [1] 19/4 22/3
complex [1] 10/24
comply [1] 20/13
compromised [1] 27/12
computer [1] 2/7
computer-aided [1] 2/7
conceit [1] 21/8
concept [1] 24/13
concern [2] 11/2 35/14
concerned [1] 16/2
concerns [3] 14/17 35/12 35/16
conclude [1] 8/21
concluded [1] 37/19
concludes [1] 17/17
conclusion [3] 9/1 18/22 21/4
conduct [6] 5/12 18/11 22/21 24/25 25/1 26/7
conducted [1] 26/2
confused [1] 17/14
Congress [1] 24/15
Connecticut [1] 11/15
consider [6] 7/12 8/3 12/10 28/7 34/19 34/23
considering [1] 32/1
considers [2] 7/24 14/9
consistent [1] 21/22
constitute [1] 16/6
Constitution [1] 2/4
constructed [1] 25/16
contemplated [1] 15/14
contention [1] 11/7
context [1] 33/10
continue [1] 23/17
CONTINUED [1] 2/1
continues [3] 11/10 11/12 22/9
contrary [5] 11/8 12/5 20/24 33/21 35/3
corner [1] 13/19
correct [1] 38/3
could [9] 7/20 9/6 10/10 12/7 15/21 25/15 25/24 26/24 28/12
couldn't [1] 8/1
counsel [5] 3/8 3/14 16/14 20/19 20/25 23/9

couple [2] 15/4 30/25
course [14] 14/22 19/13 20/2 20/9 22/3 22/22 23/6 23/10 24/13 25/3 26/7 27/19 31/9 33/23
court [38] 1/1 2/2 2/3 4/3 4/14 9/13 10/11 11/18 11/24 13/2 13/10 13/15 13/22 15/11 16/4 17/9 17/17 18/2 18/3 18/9 18/17 18/20 18/21 19/8 20/5 21/24 22/24 26/17 26/19 27/5 29/6 29/11 31/2 31/20 32/15 32/17 37/7 38/7
Court's [3] 4/4 18/15 37/15
Courthouse [1] 2/4
courts [4] 10/2 19/25 27/2 33/11
COVID [1] 38/6
COVID-19 [1] 38/6
created [1] 31/3
creating [1] 26/1
criminal [3] 15/16 21/15 21/17
criminality [1] 5/17
criteria [1] 19/22
critical [3] 25/18 27/13 28/3
critically [1] 22/5
CRR [2] 38/2 38/11
current [1] 14/8
currently [1] 25/15
curtail [1] 12/12
cut [3] 4/13 13/19 23/16
cut-off [1] 23/16
CV [1] 1/4

**D**
D.C [10] 1/5 1/15 1/22 2/5 7/5 10/14 31/1 32/4 32/12 34/10
D.C. [13] 6/18 9/24 12/1 12/19 23/3 23/20 24/15 28/10 29/7 29/18 31/6 32/22 34/25
D.C. Circuit [13] 6/18 9/24 12/1 12/19 23/3 23/20 24/15 28/10 29/7 29/18 31/6 32/22 34/25
data [2] 16/16 16/22
date [3] 30/16 31/7 38/10
day [2] 26/13 37/16
days [2] 29/3 29/23
decade [1] 15/21
December [2] 28/25 30/17
decide [1] 13/3
decided [1] 24/21
decidedly [2] 19/18 24/3
decides [1] 16/4
deciding [4] 10/22

decision [38] 4/17 6/11 7/9 7/11 7/15 12/8 13/1 13/17 14/14 17/19 17/23 18/2 18/4 18/12 18/18 18/24 19/7 20/10 20/12 20/14 20/23 21/2 22/25 24/1 24/24 25/4 25/8 25/21 26/18 26/20 27/21 28/18 28/22 29/1 32/12 33/5 34/18 34/23
decision-makers [8] 7/9 7/11 7/15 14/14 21/2 24/24 34/18 34/23
decision-making [1] 13/17
deemed [1] 5/18
defendant [1] 3/14
defendants [4] 1/7 1/19 3/17 30/3
Defense [1] 28/18
deficiencies [2] 12/15 32/3
defined [1] 23/3
defines [1] 23/7
definition [1] 34/8
definitions [1] 6/18
definitive [1] 23/24
delay [2] 10/16 32/6
demonstrates [1] 18/16
Dena [2] 1/19 3/16
dena.m.roth [1] 1/23
denied [1] 34/22
deny [2] 11/4 14/8
DEPARTMENT [5] 1/19 4/7 26/19 28/21 29/24
deprive [2] 21/1 22/11
designed [1] 18/6
detail [1] 4/16
determination [7] 5/13 7/25 8/4 8/18 21/20 24/12 24/22
determine [2] 15/18 21/7
determined [2] 7/13 24/11
determines [2] 5/16 18/17
determining [1] 33/15
develop [2] 19/22 22/8
developed [1] 29/10
development [1] 22/7
DHS [32] 4/10 4/19 5/12 5/16 7/12 7/15 7/24 8/2 8/21 8/22 8/25 9/1 10/7 11/3 11/5 11/10 11/12 12/8 12/17 13/19 14/7 14/16 27/11 27/15 27/19 30/18 31/18 34/18 34/23 35/12 35/15 36/22
DHS's [8] 4/17 4/23 6/2 8/10 9/18 23/17 27/11 27/14
did [13] 9/1 9/5 11/18 13/14 15/25 20/25 25/3 25/5 25/8 26/7 27/19

**D**

did... [2] 31/13 31/15
didn't [2] 11/17 31/18
difference [2] 7/5 23/12 31/17
different [2] 16/10 20/4
diligence [2] 21/19 36/4
DIMAIO [2] 1/3 3/5
directly [3] 32/18 35/3 35/4
disclose [1] 6/8
disclosure [1] 16/16
discontinue [1] 18/4
discretion [33] 5/1 5/3 7/9 7/12 12/17 13/2 14/14 16/3 17/12 17/18 17/23 18/13 18/18 19/5 19/8 19/19 20/7 20/22 21/2 22/2 22/8 22/12 22/12 22/15 24/23 27/21 32/10 33/7 33/8 34/7 34/14 34/18 34/22
discuss [1] 8/12
discussed [1] 32/6
dispute [3] 6/24 31/14 34/16
disqualifying [2] 7/24 8/13
disregarded [2] 15/2 35/22
distinct [2] 12/21 32/25
distinguishable [2] 30/25 31/12
DISTRICT [5] 1/1 1/1 1/10 8/24 19/17
Division [1] 1/20
DMV [14] 6/8 11/10 11/11 14/12 15/20 16/16 16/22 21/3 21/6 23/16 27/13 36/2 36/20 37/2
DMV-record [1] 21/3
do [6] 15/5 21/19 21/21 22/18 26/24 37/12
Do you have [1] 15/5
doctrine [2] 4/23 9/18
does [17] 6/8 7/11 10/7 12/17 16/6 16/21 17/17 17/23 20/23 22/11 26/13 27/18 28/4 28/24 30/2 30/3 34/17
doesn't [7] 8/2 8/12 14/14 23/10 23/12 30/23 34/18
doing [1] 7/2
don't [3] 11/12 29/5 33/11
done [1] 22/5
down [2] 5/21 22/3
dressed [1] 20/3
drive [1] 11/15
due [2] 21/19 36/4
during [2] 36/23 38/5

**E**

each [2] 5/13 11/4
early [1] 31/3

Economic [1] 31/4
effect [9] 6/12 16/12 21/1 25/20 26/12 29/1 30/12 30/17 36/7
effectively [2] 12/8 25/8
efforts [2] 27/12 27/14
eight [7] 10/21 10/24 28/21 29/4 32/8 36/5 36/20
eight-month [1] 29/4
either [2] 12/14 17/20
eligibility [8] 15/19 19/18 21/7 21/25 22/6 24/1 24/23 25/10
eligible [4] 5/21 6/25 20/2 24/7
eliminate [1] 14/14
Elisabeth [3] 1/13 1/17 3/12
else [1] 15/5
Email [2] 1/16 1/23
emergencies [1] 35/22
emergency [2] 14/25 31/2
emphasis [1] 29/25
employees [2] 14/10 35/13
enacted [7] 6/7 10/20 17/4 28/25 30/13 30/19 32/7
enactment [1] 10/18
end [2] 20/7 26/13
ends [1] 24/14
enforce [1] 20/21
enforceable [1] 12/23
enforcement [3] 33/10 33/13 34/7
enforcing [2] 25/15 26/1
engage [2] 9/18 12/2
ensure [1] 27/11
ensures [1] 13/17
entered [1] 21/24
entire [2] 8/5 19/12
entirely [2] 34/8 35/22
entirety [1] 18/5
entries [1] 5/11
entry [13] 4/9 5/8 7/1 13/7 14/8 15/14 15/22 19/18 20/2 22/4 24/3 25/10 34/21
error [7] 4/23 9/17 11/23 11/25 12/3 25/19 27/25
essentially [3] 20/15 22/19 30/1
et [3] 1/3 1/6 3/5
evaluate [3] 15/17 22/20 29/20
evaluating [1] 30/4
evaluation [1] 21/4
even [10] 7/13 10/10 11/18 12/23 12/25 16/4 17/17 20/11 29/4 33/4
every [4] 8/21 8/24 13/19 22/12

evident [1] 27/4
evince [1] 24/18
eviscerated [1] 12/4
examine [2] 10/2 11/19
example [1] 33/17
exception [15] 4/22 9/14 9/17 9/21 10/1 10/11 10/15 11/17 11/22 11/23 30/23 31/8 31/14 32/5 33/9
excessing [1] 9/11
excluded [1] 4/8
excluding [1] 8/6
exclusively [1] 31/3
excuse [2] 4/23 9/18
excused [2] 29/12 29/15
exercise [4] 7/9 20/21 22/15 34/7
exist [1] 30/4
existing [8] 5/7 6/20 6/21 8/10 9/5 11/3 35/8 35/12
exists [2] 10/12 22/4
expired [1] 30/7
explain [3] 4/16 10/7 36/24
explained [2] 21/5 34/10
explaining [1] 27/13
explains [2] 20/20 34/6
explanation [7] 10/3 10/12 11/20 15/25 23/13 31/15 33/2
explicit [1] 27/3
explicitly [2] 9/24 25/5
express [1] 34/6
extent [1] 28/5
external [1] 26/4

**F**

F.2d [1] 27/6
FAA [2] 29/6 29/8
face [2] 16/19 23/6
faced [1] 36/21
fact [20] 6/13 11/10 15/25 16/18 17/10 17/22 18/1 21/18 21/20 23/10 24/4 24/8 24/18 25/9 25/23 25/24 25/24 26/5 28/17 28/20
factor [7] 7/21 7/23 8/2 8/13 8/16 26/4 32/2
factors [5] 5/14 7/24 8/5 8/13 24/14 24/17 33/11
facts [3] 21/23 22/19 31/13
factual [1] 30/12
fail [1] 10/12
failed [1] 18/11
failure [4] 4/23 9/18 12/2 27/2
fair [1] 13/17
fallback [1] 7/19
fatal [1] 8/14
FBI [1] 8/25

February [36] 5/5 5/20 6/11 6/25 7/1 7/10 7/16 7/19 8/1 8/5 8/8 9/2 9/2 9/8 10/7 11/24 15/25 16/6 16/25 17/19 20/12 20/23 20/25 22/25 23/6 23/25 25/8 27/8 29/2 31/19 33/16 33/21 34/17 34/17 35/2 35/6
February 5 [1] 16/6
February 5th [1] 34/17
federal [7] 1/20 8/23 13/15 14/25 15/15 21/16 25/4
felt [1] 14/16
few [2] 20/19 26/15
final [1] 12/16
finally [6] 9/4 11/7 25/7 27/24 28/5 31/12
find [1] 20/6
finding [8] 9/22 11/17 14/21 14/22 27/9 31/11 31/23 35/20
finds [1] 19/8
first [16] 3/21 4/17 5/5 7/17 8/3 10/11 13/4 16/12 17/8 24/20 28/25 30/11 30/20 31/1 31/20 31/25
fit [1] 28/24
five [2] 3/22 4/5
flatly [1] 5/22
Flight [1] 34/11
follow [5] 4/24 10/8 13/4 13/5 13/11
followed [2] 13/12 18/22
following [1] 27/15
follows [1] 20/5
force [1] 23/15
foreclosed [1] 32/11
foregoing [1] 38/3
forgoing [1] 26/16
form [1] 20/4
former [1] 11/13
forth [9] 6/22 16/24 21/12 23/15 24/14 24/17 25/11 26/25 27/21
forward [3] 21/19 30/3 36/3
found [4] 19/16 21/24 28/11 29/11
four [2] 24/14 24/17
framework [4] 14/24 15/2 35/21 35/23
free [1] 7/9
front [1] 35/1
fully [1] 15/22
fundamentally [2] 5/6 13/7
further [5] 22/10 23/19 29/22 37/7 37/13

**G**

general [8] 4/21 7/4 9/9 17/20 20/15 20/18

generally [1] 10/24
get [2] 37/11 37/12
getting [1] 22/14
global [14] 4/8 5/7 5/11 7/1 13/7 14/8 15/14 15/22 19/18 20/2 22/4 24/3 25/10 34/21
go [3] 13/16 20/8 37/4
going [3] 14/11 25/19 29/12
good [40]
good-cause [22] 9/17 9/20 9/22 9/25 10/11 10/15 11/17 14/20 14/22 26/16 27/3 27/9 27/17 28/9 28/19 30/23 31/8 31/10 31/14 31/23 32/5 35/19
governing [3] 19/21 33/19 35/16
government [39]
government's [13] 4/25 8/15 11/7 11/20 12/7 12/13 13/1 32/9 32/11 33/5 34/2 35/11 36/17
governor [2] 17/2 17/5
governs [1] 5/7
Graham [2] 1/13 3/10
graham.white [1] 1/17
grant [1] 26/19
great [1] 37/16
greater [1] 4/16
Green [7] 10/18 10/20 16/12 30/12 30/13 30/17 32/7
grounds [1] 9/25
guidance [1] 14/10

**H**

had [13] 8/21 11/2 21/15 21/25 22/2 25/14 25/15 25/20 26/12 29/10 29/17 37/4 37/4
halt [1] 10/22
hard [2] 12/14 36/18
harmless [6] 4/23 9/17 11/25 12/3 25/19 27/24
has [28] 4/8 5/3 6/10 6/12 7/5 8/14 9/24 11/3 11/18 12/11 13/13 13/22 14/3 14/7 15/21 16/18 21/16 22/5 24/11 24/21 25/9 31/6 34/8 34/10 35/14 35/17 36/10 36/10 37/7 37/16
hasn't [1] 31/24
have [31] 3/4 3/22 3/24 4/15 7/3 8/21 11/9 11/11 12/7 12/17 15/4 15/5 16/21 17/13 19/13 21/1 24/25 25/15 25/20 26/12 26/13 27/2 28/4 35/13 36/11 36/14 36/18 36/21 37/1 37/5 37/16
haven't [1] 24/7
having [1] 22/20

**H**

he [2] 21/10 23/15
Health [4] 18/4 18/10 21/25 22/2
healthcare [1] 18/7
hear [5] 3/21 15/9 30/9 34/1 36/13
hearing [3] 1/9 3/6 38/5
hears [1] 31/3
held [1] 12/19
her [1] 11/6
here [33] 3/12 3/19 9/5 11/20 12/25 13/19 14/23 15/2 17/17 19/6 19/14 19/16 19/22 20/3 20/6 22/4 22/23 23/25 27/8 28/2 28/7 28/14 28/22 29/24 30/4 31/20 33/14 33/15 33/19 34/11 34/16 35/2 35/23
herself [2] 3/9 3/15
highlights [1] 37/8
him [1] 3/9
his [2] 11/6 16/24
history [1] 21/17
hit [1] 37/8
hoc [2] 8/17 31/21
holds [1] 7/14
homeland [5] 4/7 14/3 15/24 27/12 28/18
honest [1] 21/14
Honor [22] 3/2 4/2 15/10 16/13 16/15 17/3 17/13 17/22 19/2 19/21 20/11 20/11 22/16 22/24 25/17 27/1 27/17 27/24 28/5 28/15 30/10 37/18
HONORABLE [1] 1/10
host [1] 21/11
how [13] 13/7 14/11 14/24 18/16 20/20 20/21 22/20 23/7 23/16 26/8 34/6 35/17 35/21
Howell [2] 19/16 19/20
However [1] 6/10
Huerta [1] 34/12

**I**

I can't [1] 37/11
I have [1] 4/15
I just [1] 28/15
I think [13] 17/13 18/1 18/15 19/1 20/5 23/19 24/16 25/18 29/17 29/23 29/25 30/16 37/8
I was [1] 25/19
I'd [10] 12/16 13/23 15/6 16/9 16/12 17/8 27/4 30/11 30/20 31/22
I'll [4] 4/15 17/21 20/18 37/12
I'm [6] 3/12 32/17 32/23 34/6 34/10 36/13
I'm sorry [1] 34/6 36/13
I've [1] 37/8

identify [2] 5/3 12/17
ignore [2] 5/3 12/17
ignored [1] 34/8
immediate [1] 27/11
immediately [2] 10/18 27/15
imminent [1] 14/17
impact [1] 30/5
impermissible [1] 31/21
implemented [2] 16/18 37/14
important [4] 23/19 32/2 35/1 37/5
importantly [2] 31/6 32/1
impractical [1] 14/19
inception [1] 15/13
include [4] 19/13 27/2 31/16 33/18
including [3] 8/23 19/9 21/13
inconsistent [3] 5/22 6/20 9/10
incorporate [1] 9/22
incorporated [1] 10/1
Indian [4] 18/4 18/5 18/10 21/25
individual [6] 5/16 7/25 11/5 21/9 21/11 24/8
individualized [1] 5/13
individuals [4] 14/9 20/1 24/6 33/20
ineligible [1] 5/19
information [8] 21/3 21/21 24/11 24/25 26/9 26/14 28/4 30/6
initial [1] 12/10
instance [2] 9/19 26/24
intact [1] 25/10
interest [1] 11/8
interfere [1] 35/10
interim [1] 29/22
internal [1] 26/8
interpret [2] 8/4 8/15 23/5
interpretation [5] 8/2 8/20 9/3 23/7 23/16
interpreting [1] 7/21 8/16
interpretive [15] 4/21 7/18 7/20 8/8 8/14 9/4 9/8 17/20 20/16 23/1 23/4 24/13 24/19 27/23 35/1
interpretive-rule [1] 24/13
interrelated [1] 18/17
invoke [11] 9/20 10/10 10/15 11/16 25/5 30/23 31/8 31/13 31/18 31/20 32/4
invokes [2] 11/22 27/9
involve [1] 14/2
involving [1] 22/18
irrationally [1] 25/22
irreconcilable [1] 23/22

**J**

Jersey [1] 11/14
Jifry [1] 29/6
JONATHAN [1] 1/3 3/5
JUDGE [3] 1/10 19/16 19/20
Judge Howell [2] 19/16 19/20
judgment [2] 3/20 13/9
judicial [1] 12/22 14/23 32/25
judicially [2] 17/11 19/24
June [1] 1/5 10/21 30/13 30/18 32/7 38/10
just [10] 6/4 8/16 16/15 20/3 20/25 25/7 27/1 27/16 27/22 28/15
JUSTICE [1] 1/19
justification [1] 31/21
justify [2] 10/6 28/12
justifying [1] 9/25

**K**

KAYE [1] 1/14
keep [2] 27/14 32/2
key [1] 7/5
kind [5] 14/2 21/17 24/13
know [3] 23/9 29/15 29/21
knows [1] 19/2

**L**

lacks [1] 21/20
last [3] 25/18 35/9

is [156]
isn't [1] 12/24
issuance [1] 6/24
issue [7] 13/14 14/10 24/6 26/19 27/17 27/19 28/8
issued [1] 31/19
issues [5] 6/14 14/1 21/15 34/3 35/19
issuing [1] 32/8
it [75]
it would be [1] 11/8
it's [22] 3/23 4/19 9/9 9/9 9/10 10/14 12/3 12/6 14/10 17/20 22/13 25/25 27/25 28/17 29/17 31/1 31/1 31/5 31/25 32/3 34/24 35/22
its [34] 7/8 10/11 10/17 10/20 12/10 13/2 13/20 14/10 14/14 15/16 16/19 16/19 18/4 19/11 20/21 21/19 22/6 22/22 22/22 23/6 26/9 26/9 26/10 27/21 28/22 29/1 30/5 30/14 31/12 31/25 33/6 34/7 34/14 37/14
itself [8] 8/9 9/23 20/10 30/18 30/24 31/10 31/11 33/24

law [33] 6/21 10/5 10/14 10/18 10/21 13/20 16/13 17/2 17/14 19/5 21/16 21/22 22/13 23/15 25/15 28/24 28/25 29/2 30/12 30/13 30/17 30/18 30/18 30/19 32/4 32/7 33/7 33/8 33/14 33/15 33/25 36/5 36/7
lawful [3] 5/10 5/24 35/5
leads [1] 13/17
least [1] 36/19
leave [4] 7/8 7/11 26/19 34/18
left [4] 15/4 25/9 36/11 36/14
legal [2] 23/11 24/20
legally [1] 6/22
legislation [3] 6/4 6/7 37/14
legislative [16] 4/18 4/19 5/6 6/17 7/6 9/10 9/15 13/6 17/1 23/23 25/5 25/9 26/18 27/18 27/20 35/25
LEON [1] 1/10
less [4] 10/23 10/24 29/2 29/23
less-than-60 [1] 29/23
let [3] 13/25 26/15 27/1
letter [26] 4/11 5/5 6/25 7/1 8/9 8/15 9/5 9/6 16/6 16/25 20/25 21/5 21/6 21/18 23/6 23/10 23/11 25/6 27/8 28/24 31/19 32/8 34/17 34/20 36/3 36/6
light [14] 10/18 10/20 16/13 29/19 30/12 30/13 30/17 32/7
like [12] 3/23 4/4 8/23 12/16 13/23 15/6 16/9 16/12 17/8 30/11 30/20 31/22
likelihood [1] 28/11
likely [1] 37/3
limitations [1] 38/7
limited [1] 21/13
Lincoln [6] 18/2 18/22 21/24 32/12 32/14 32/21
line [1] 28/23
listed [1] 5/14
little [1] 11/21
live [2] 6/13 11/12
living [1] 8/25
LLP [1] 1/14
local [2] 15/15 21/17
logical [1] 12/15
long [4] 11/11 14/13 14/20 35/19
longer [13] 5/21 15/21 18/19 20/9 21/7 21/8 21/19 24/4 24/9 24/25 25/24 33/22 35/7

look [3] 29/6 33/11 33/14
loss [1] 26/9
low [14] 5/18 7/21 7/23 8/12 8/16 8/20 8/22 9/3 11/6 15/17 21/10 23/8 24/6 24/10
low-risk [6] 5/18 8/16 8/22 11/6 15/17 21/10 24/6 24/10
low-risk-status [2] 7/21 7/23
low-risk-travel [1] 8/12

**M**

made [7] 7/5 12/1 18/21 28/20 29/14 31/11 33/16
main [1] 4/15
maintain [1] 22/9
make [13] 9/1 11/17 12/16 21/4 21/20 23/12 24/12 25/19 28/21 30/11 31/22 33/4 35/24
makers [8] 7/9 7/11 7/15 14/14 21/2 24/24 34/18 34/23
makes [4] 10/4 11/20 14/20 31/10
making [6] 7/24 10/23 13/17 17/16 33/1 35/19
manageable [1] 19/25
manner [1] 20/24
many [2] 12/15 33/18
Massachusetts [1] 1/15
materials [1] 21/14
matter [6] 16/2 20/6 25/12 25/13 32/20 38/4
may [7] 4/2 5/10 5/24 15/11 17/7 33/20 35/5
me [5] 9/16 13/25 26/15 27/1 36/13
mean [1] 17/23
means [1] 12/25
meant [1] 12/12
mechanical [1] 2/7
Medical [3] 12/19 32/13 32/23
meets [1] 19/17
membership [1] 24/3
mentioned [1] 27/25
mentioning [1] 36/9
mere [1] 23/23
Merit [1] 2/2
merits [1] 10/13
met [1] 15/18
Michal [1] 1/19
mid [1] 28/25
mid-December [1] 28/25
million [3] 4/8 8/19 13/8
millions [1] 11/13
mind [2] 12/9 32/2
minded [1] 25/23
Mining [1] 24/15
minute [3] 25/7 36/11

**M**

**minute... [1]** 36/14
**minutes [7]** 3/22 3/22 3/24 4/5 15/4 15/4 20/19
**missed [1]** 6/14
**mission [1]** 22/22
**modified [1]** 21/25
**modify [1]** 35/16
**moment [1]** 17/21
**month [1]** 29/4
**months [5]** 10/21 10/24 28/21 32/8 36/5
**more [6]** 14/16 15/21 19/15 29/19 31/6 32/1
**most [1]** 32/2
**motion [4]** 3/19 3/20 13/9 13/15
**motions [2]** 1/9 3/6
**moving [6]** 3/21 6/16 21/19 22/24 34/2 36/3
**Mr. [6]** 4/1 6/1 6/3 13/25 36/12 36/14
**Mr. White [6]** 4/1 6/1 6/3 13/25 36/12 36/14
**Ms. [1]** 25/12
**Ms. Roth [1]** 25/12
**much [3]** 21/22 30/8 37/16
**must [6]** 7/8 10/5 13/21 31/8 31/11 33/18
**my [10]** 3/12 9/16 13/23 15/7 17/3 20/19 20/25 23/9 28/16 37/12

**N**

**N-a-d-e-r [1]** 27/6
**Nader [3]** 27/5 30/22 31/7
**Nader v [1]** 30/22
**narrow [2]** 13/10 33/9
**nation [1]** 27/14
**national [7]** 14/2 14/3 14/4 15/1 28/17 35/11 35/15
**national-security [2]** 14/3 15/1
**national-security-type [1]** 14/4
**Native [1]** 18/7
**nature [1]** 28/1
**necessarily [1]** 18/16
**need [4]** 24/25 27/10 27/14 30/23
**needed [2]** 24/12 30/6
**needs [6]** 13/3 18/7 21/21 26/6 26/14 28/4
**neither [2]** 4/22 9/17
**never [2]** 5/2 8/9
**new [55]**
**New York [18]** 4/11 7/13 8/24 8/25 10/20 10/22 11/12 11/15 15/20 15/22 16/23 17/2 21/8 22/13 24/9 32/6 34/20 36/2
**New York's [3]** 16/16 16/22 37/14

**New Yorker [3]** 7/15 8/21 11/2
**New Yorker's [1]** 34/19
**New Yorkers [19]** 4/8 4/17 5/21 6/11 6/25 7/16 7/17 8/3 8/6 9/6 13/2 14/12 14/13 24/4 33/6 33/22 35/7 36/2 36/25
**New Yorkers' [1]** 24/1
**no [29]** 1/4 3/4 5/21 6/14 6/24 10/25 12/7 13/22 15/21 18/19 18/23 19/8 19/24 20/8 21/7 21/8 21/19 23/11 24/4 24/9 24/24 25/10 25/20 25/24 26/12 33/22 34/16 34/22 35/7
**non [1]** 33/10
**non-enforcement [1]** 33/10
**none [1]** 22/16
**nontrivial [1]** 28/11
**not [81]**
**note [3]** 16/15 28/15 38/5
**notice [37]** 4/12 4/20 4/24 5/3 9/14 9/19 10/8 10/22 12/2 12/13 12/18 12/21 13/4 13/16 14/1 14/11 14/18 16/7 18/11 18/23 20/8 20/13 20/17 25/13 25/14 25/20 26/3 26/12 26/16 26/21 28/1 29/9 29/13 32/19 33/1 35/18 37/4
**notwithstanding [2]** 16/18 17/24
**now [5]** 9/6 14/22 23/25 26/7 29/16
**Nowhere [1]** 10/6
**number [4]** 5/14 8/18 27/9 28/22
**NW [3]** 1/15 1/21 2/4

**O**

**obligation [2]** 11/19 24/5
**obligations [2]** 15/17 26/10
**observance [1]** 13/20
**obtain [1]** 6/23
**obviously [3]** 12/4 29/24 36/4
**occurred [1]** 38/5
**off [3]** 21/2 23/16 36/1
**Official [1]** 2/3
**officials [5]** 4/11 8/23 21/6 22/11 23/13
**Okay [5]** 4/6 15/6 15/8 17/6 36/15
**once [2]** 8/10 18/17
**one [16]** 7/23 8/9 13/10 17/16 18/18 22/13 23/23 24/23 28/3 31/22 33/4 35/24 36/9 36/11 36/17
**ongoing [1]** 15/15

**only [5] 23/16 32/3**
**onto [2] 3/15 25/24**
**26/3 26/4 36/11**
**operate [2] 14/25 35/22**
**operation [1] 23/18**
**operationally [1] 27/13**
**operations [2] 22/22 26/9**
**opinion [3] 32/18 32/22 37/11**
**opportunities [1] 29/21**
**opportunity [4] 4/12 27/17 27/23 28/8**
**opposing [5] 20/19 20/25 23/9 28/16 28/20**
**opposite [1] 6/19**
**options [1] 30/5**
**oral [1] 3/19**
**order [4] 15/16 16/10 24/12 24/25**
**Orengo [2] 23/3 23/19**
**original [1] 33/17**
**other [15] 4/9 8/9 8/13 15/16 16/21 19/6 21/11 22/12 22/20 23/13 33/4 34/3 36/8 36/20 36/25**
**otherwise [4] 5/18 15/18 24/20 27/22**
**our [7] 6/6 6/13 23/4 24/16 24/18 26/25 31/9**
**out [10] 18/1 19/1 19/20 23/9 23/20 25/14 26/1 26/10 27/1 29/6**
**outcome [1] 12/14**
**outline [1] 4/15**
**outlined [1] 10/3**
**outside [1] 22/21**
**over [1] 31/14**
**overlooked [1] 27/4**
**oversimplified [1] 17/14**
**overtones [1] 14/4**
**own [3] 10/16 22/21 32/6**

**P**

**p.m [2] 1/6 37/19**
**page [2] 4/10 30/15**
**page 6 [1] 30/15**
**pandemic [1] 38/6**
**part [2] 8/10 22/17**
**partial [1] 3/20**
**participants [1] 33/18**
**participate [2] 5/10 5/25**
**particularly [1] 10/23**
**parties [3] 3/3 13/18 22/21**
**party [2] 3/21 6/22**
**passed [2] 6/5 36/5**
**people [3] 8/19 11/9 11/11**
**perfect [1] 10/4**
**perfectly [1] 25/9**
**period [7] 28/1 28/21 29/2 29/5 29/19 29/20 30/1**

**permanent [3] 5/9 5/24 35/5**
**permission [1] 4/4**
**persuaded [1] 28/6**
**piece [1] 28/3**
**pilot [1] 15/13**
**place [4] 7/17 8/3 13/4 25/9**
**plain [3] 5/23 9/21 35/3**
**plainly [2] 23/6 32/11**
**plaintiff [4] 3/8 20/1 20/12 24/16**
**plaintiffs [13] 1/4 1/13 3/11 17/13 19/6 19/13 20/3 22/17 23/25 25/21 27/18 29/5 35/10**
**plaintiffs' [7] 13/9 16/5 16/9 16/13 17/8 17/25 29/25**
**please [5] 3/15 4/3 15/11 37/14 38/5**
**pleasure [1] 4/1**
**plenty [2] 33/14 33/25**
**point [18] 5/5 9/16 12/16 14/16 14/23 22/14 22/18 23/20 24/17 25/18 27/1 27/24 30/11 30/12 30/20 31/22 33/4 35/24**
**pointed [2] 19/20 23/20**
**points [4] 4/15 23/9 36/8 36/16**
**policy [20] 4/21 6/21 7/4 7/6 7/7 7/8 7/10 9/9 9/11 17/20 20/15 20/19 20/20 23/1 27/22 34/4 34/5 34/9 34/12 34/24**
**policy-statement [1] 34/4**
**PORTER [2] 1/14 3/11**
**position [6] 6/19 7/19 12/7 12/11 12/13 34/14**
**possible [1] 25/14**
**possibly [1] 8/1**
**post [3] 8/16 31/7 31/21**
**post-date [1] 31/7**
**posture [1] 22/19**
**potential [1] 5/17**
**practicable [1] 33/18**
**practical [2] 25/12 25/13**
**pre [1] 11/3**
**pre-existing [1] 11/3**
**precedent [2] 5/2 34/25**
**precise [1] 6/9**
**precisely [2] 12/11 20/23 23/13**
**precluded [1] 10/19**
**prejudicial [1] 11/23**
**prejudicial-error [1] 11/23**
**present [1] 21/1**
**presented [2] 5/17 16/11**
**pretty [1] 31/17 37/3**

**prevent [1] 29/22**
**prevented [1] 36/2**
**preventing [1] 22/14**
**principle [2] 10/5 12/5**
**prior [7] 6/24 10/9 21/15 23/22 23/24 24/1 25/8**
**private [1] 6/22**
**procedural [10] 11/25 12/23 14/24 16/5 17/9 17/25 18/10 19/10 32/15 35/21**
**procedure [4] 4/14 13/20 16/1 36/23**
**procedures [10] 4/24 5/4 10/9 12/18 13/4 13/5 13/11 13/16 14/20 35/19**
**proceed [1] 17/7**
**proceedings [4] 1/9 2/7 37/19 38/4**
**process [5] 8/6 10/23 13/8 21/9 26/8**
**processed [1] 35/17**
**processing [1] 16/23**
**produced [1] 37/2**
**program [10] 15/14 15/14 16/17 18/6 18/6 22/2 22/3 22/4 26/1 33/6**
**program's [1] 15/19**
**programs [10] 1/20 4/9 4/18 5/22 5/25 6/9 8/19 33/18 33/20 35/6**
**prohibited [1] 7/2**
**promise [1] 37/11**
**promulgate [2] 4/20 22/8**
**promulgated [4] 13/6 29/8 29/17 33/16**
**promulgating [1] 27/20**
**proposition [1] 30/22**
**prospective [2] 20/24 27/15**
**protect [1] 27/12**
**protection [1] 14/2**
**provide [1] 33/11**
**provides [3] 14/24 19/3 33/24**
**providing [1] 4/11**
**provision [1] 33/24**
**provisions [1] 32/20**
**public [9] 4/12 7/7 11/8 23/13 28/3 34/13 36/10 36/17 36/23**
**public-comment [1] 36/23**
**publish [1] 25/3**
**published [1] 10/1**
**publishing [1] 23/14**
**purpose [3] 6/9 16/17 16/20**
**purposes [1] 6/13**
**put [2] 25/14 30/3**

**Q**

**question [8] 9/13**

## Q

**question... [7]** 13/25 20/9 25/18 28/16 32/18 32/25 34/4
**questions [6]** 13/10 13/22 18/16 32/16 33/3 37/7
**quick [3]** 16/15 30/11 36/16
**quickly [2]** 34/2 37/12
**quintessential [1]** 20/15
**quite [1]** 32/20
**quotes [1]** 8/10
**quoting [4]** 32/17 32/23 34/11 35/4

## R

**raises [1]** 25/18
**rather [3]** 8/4 22/2 25/23
**rationalization [1]** 8/17
**rationally [1]** 12/10
**reach [1]** 21/4
**reactive [1]** 22/19
**reader [1]** 21/6
**real [1]** 25/23
**real-world [1]** 25/23
**realize [1]** 35/2
**really [2]** 29/2 30/1
**Realtime [1]** 2/3
**reason [5]** 6/17 18/23 19/24 29/25 36/19
**reasoned [1]** 33/2
**reasons [5]** 8/9 16/24 26/24 28/22 31/1
**rebuttal [5]** 3/23 4/5 13/24 15/7 30/9
**receive [1]** 22/1
**receives [1]** 28/3
**recent [1]** 6/7
**recently [1]** 6/5
**recognized [2]** 27/2 29/18
**record [4]** 3/9 3/15 21/3 38/3
**recorded [1]** 2/7
**records [13]** 6/8 11/9 11/11 14/13 15/16 15/20 23/16 25/25 26/6 27/13 36/2 36/20 37/2
**refer [1]** 27/5
**reference [1]** 28/20
**referring [2]** 27/10 30/16
**regard [2]** 17/12 19/20
**Registered [1]** 2/2
**regular [1]** 11/15
**regulated [1]** 13/18
**regulation [20]** 5/7 5/12 5/23 8/11 9/5 9/11 11/3 14/8 14/18 14/21 16/3 20/21 23/10 25/11 26/11 33/21 35/4 35/8 35/12 35/16
**regulations [9]** 6/20 21/12 24/2 24/5 24/22 25/2 25/4 33/10 33/19

**regulatory [3]** 15/23 06/14 15/2 06 unte 1 2 44 filed 06 21 20 Page 23/5
**reject [1]** 35/13
**related [2]** 28/18 32/16
**relevant [1]** 14/23
**relied [1]** 25/25
**rely [1]** 22/17
**remand [2]** 48/12 31/23 31/24 32/1
**remanding [1]** 28/7
**remotely [1]** 38/7
**removal [1]** 30/5
**Reno [3]** 12/20 32/13 32/23
**repeated [1]** 27/10
**repeatedly [1]** 31/7
**Reporter [4]** 2/2 2/2 2/3 2/3
**reporting [1]** 38/7
**repudiates [2]** 23/22 24/1
**request [4]** 26/18 27/16 27/23 28/7
**requested [1]** 31/24
**require [1]** 35/16
**required [10]** 4/19 11/1 13/3 13/5 13/20 20/8 23/24 24/5 25/1 32/18
**requirement [6]** 6/22 16/8 17/17 18/24 20/14 26/22
**requirements [8]** 12/4 12/23 15/19 19/18 20/17 21/12 24/7 25/11
**requires [4]** 5/12 9/21 13/15 21/9
**requiring [1]** 20/13
**reservations [1]** 18/8
**reserve [3]** 3/22 4/5 13/23 15/6
**residence [1]** 15/23
**residents [9]** 5/10 5/24 10/19 11/14 16/23 21/8 24/9 35/5 37/1
**respect [1]** 22/13
**respectfully [2]** 22/16 27/16
**respond [2]** 28/16 35/11
**responses [2]** 14/6 34/3
**rest [1]** 34/8
**restrict [1]** 36/20
**restrictions [4]** 36/21 36/24 36/25 37/1
**result [3]** 10/16 32/5 34/20
**resume [1]** 16/22
**resumption [1]** 26/5
**retain [1]** 22/12
**retains [1]** 34/13
**review [6]** 11/4 12/22 16/4 17/9 18/20 32/25
**reviewability [1]** 32/25
**reviewable [7]** 12/24 17/11 17/24 18/13 18/25 20/9 20/10
**reviewing [1]** 10/2

**RICHARD [1]** 1/10
**right [4]** 3/18 6/15 15/3 30/7
**risk [20]** 5/13 5/17 5/18 7/21 7/23 7/24 8/4 8/12 8/16 8/20 8/22 9/3 11/2 11/6 15/17 21/10 23/8 24/6 24/10 35/14
**risk-determination [1]** 8/4
**risky [1]** 14/9
**RMR [2]** 38/2 38/11
**Room [1]** 1/21 2/5
**Roth [3]** 1/19 3/16 25/12
**rule [73]**
**rule's [1]** 32/3
**rule-making [4]** 10/23 17/16 33/1 35/19
**rulemaking [14]** 4/20 9/15 9/19 10/8 12/2 12/4 12/14 12/20 14/18 18/11 18/24 26/3 29/13 37/5
**rules [5]** 9/15 10/24 29/9 29/10 29/17
**ruling [1]** 35/9

## S

**S-a-w-h-i-l-l [1]** 27/6
**said [4]** 9/24 20/25 31/6 32/17
**same [2]** 16/24 28/13
**satisfies [2]** 6/18 9/14
**satisfy [4]** 11/5 15/16 21/10 24/4
**satisfying [1]** 8/22
**Sawhill [2]** 27/5 30/22
**say [2]** 15/5 26/15
**saying [2]** 33/22 34/5
**says [9]** 5/9 5/23 7/19 10/17 26/14 32/14 32/23 33/17 33/20
**scheme [2]** 5/20 8/6
**SCHOLER [1]** 1/14
**scrutiny [1]** 14/23
**searching [1]** 26/8
**second [6]** 4/22 9/16 11/22 23/21 23/21 23/23
**Secret [1]** 7/14
**Secretary [10]** 16/24 17/24 19/7 21/3 22/11 23/14 24/21 25/3 25/5 29/1
**Secretary's [4]** 15/24 19/7 25/21 26/17
**Section [6]** 5/9 5/15 7/22 19/3 33/19 35/3
**Section 701 [1]** 19/3
**secure [1]** 27/14
**security [14]** 4/7 7/14 8/23 14/2 14/3 14/4 14/16 15/1 15/24 28/17 29/14 29/22 35/11 35/15
**see [1]** 12/6

**seeking [1]** 31/24 hute Page 23/4
**seems [1]** 37/3
**SENIOR [1]** 1/10
**sense [2]** 10/4 11/21
**separate [1]** 33/3
**seriousness [1]** 32/3
**serve [1]** 18/6
**Service [3]** 18/4 18/11 21/25
**set [8]** 16/24 21/12 22/18 24/10 24/14 24/17 25/11 26/24
**sets [2]** 6/21 35/20
**setting [2]** 23/15 27/21
**settled [2]** 10/14 32/4
**seven [1]** 7/23
**several [1]** 27/10
**sharing [1]** 16/19
**she [1]** 21/10
**short [1]** 29/24
**should [9]** 4/14 10/1 11/24 19/22 28/18 29/6 31/23 33/12 33/12
**show [1]** 24/10
**shut [1]** 22/3
**shutting [2]** 21/2 36/1
**sic [2]** 19/12 28/6
**signed [4]** 17/2 17/4 17/4 30/18
**significant [1]** 31/17
**silent [1]** 19/22
**similar [3]** 18/21 19/17 22/18
**similarly [2]** 36/21 37/1
**simply [6]** 7/21 21/5 21/18 24/8 34/24 36/3
**since [2]** 15/13 31/5
**single [2]** 8/21 8/24
**sir [1]** 15/8
**smarter [1]** 13/17
**so [54]**
**So I think [1]** 37/3
**some [1]** 34/3
**somehow [2]** 24/1 25/22
**someone [1]** 19/17
**something [1]** 8/15
**somewhat [2]** 16/10 17/13
**soon [1]** 37/15
**sorry [2]** 34/6 36/13
**sort [1]** 12/11
**Southern [1]** 8/24
**speaking [1]** 3/8
**specific [1]** 34/15
**spite [1]** 17/10
**square [2]** 12/15 36/18
**squarely [3]** 6/18 16/2 30/2
**Stabilization [1]** 31/4
**standard [3]** 19/25 22/6 33/24
**standards [1]** 22/1
**start [1]** 20/18
**state [6]** 4/11 10/7 11/14 15/15 17/14 17/21 22/16 37/1 37/13
**statement [21]** 4/21

**5/4 7/6 7/10 9/9 17/20 20/15 20/20 23/1 23/4 23/24 26/20 27/3 27/17 27/19 27/22 28/9 34/4 34/5 34/9 34/24
**statements [4]** 7/7 7/8 20/18 34/12
**states [5]** 1/1 1/10 16/20 36/21 37/1
**status [6]** 7/21 7/23 8/22 11/6 15/17 24/10
**statute [6]** 16/3 19/21 20/21 23/8 26/10 33/17
**statutes [1]** 33/10
**statutory [1]** 23/5
**stenography [1]** 2/7
**step [1]** 10/9
**steps [1]** 13/14
**still [6]** 6/3 6/12 6/13 13/2 16/21 22/4
**stood [1]** 18/22
**strawman [1]** 30/2
**Street [1]** 1/21
**strictures [2]** 12/21 33/1
**structure [1]** 19/2
**subject [4]** 14/23 16/7 20/16 38/6
**submitted [2]** 20/6 22/7 34/21
**substance [2]** 13/1 19/15
**substantive [13]** 6/21 9/11 12/22 12/24 13/13 14/17 16/6 17/19 30/20 32/16 32/20 32/25 35/8
**such [4]** 9/1 11/17 14/18 27/19
**suggest [1]** 29/5
**summarize [1]** 11/16
**summary [2]** 3/20 13/9
**supply [1]** 25/2
**supposed [3]** 33/11 14/25 35/21
**Supreme [7]** 18/2 18/3 18/9 18/15 18/21 32/15 32/17
**Supreme Court [4]** 18/3 18/21 32/15 32/17
**Sure [1]** 14/5
**sweeping [1]** 4/10

## T

**take [5]** 13/14 27/11 27/15 30/6 33/12
**taken [1]** 2/6
**takes [1]** 10/24
**taking [2]** 5/14 10/9
**technical [1]** 27/3
**technological [1]** 38/7
**telephone [1]** 3/7
**TELEPHONIC [1]** 1/9
**Temporary [1]** 31/2
**term [4]** 8/20 9/3 23/5 23/8
**terms [1]** 19/11
**terrorism [1]** 5/17
**text [4]** 5/23 9/21 31/10

**T**

**text... [1]** 35/3
**than [5]** 8/4 10/24 15/21 29/2 29/23
**thank [12]** 4/2 4/6 15/8 15/10 17/6 25/17 30/8 30/10 37/9 37/16 37/17 37/18
**Thank you [6]** 4/2 15/8 15/10 30/10 37/16 37/18
**Thank you very much [1]** 30/8
**that [224]**
**that's [12]** 8/13 20/7 21/22 22/3 27/5 27/6 31/17 32/16 32/21 34/21 36/9 36/19
**their [15]** 7/2 8/22 10/6 21/2 21/8 21/14 22/11 22/12 22/15 22/17 23/17 24/5 24/10 24/10 24/24
**them [2]** 13/12 37/15
**then [7]** 3/24 4/16 5/12 9/13 18/23 30/19 34/2
**theodore [3]** 1/13 1/18 3/13
**there [16]** 6/14 10/7 12/3 18/15 18/19 18/23 19/8 19/24 21/24 23/20 24/20 26/23 29/12 31/22 36/19 37/5
**there's [9]** 6/24 10/25 23/11 28/11 33/14 33/25 34/16 34/22 37/13
**therefore [5]** 16/22 18/13 20/5 20/16 38/6
**these [11]** 4/18 5/22 5/25 8/19 13/5 29/10 29/17 33/2 33/20 35/6 35/17
**they [12]** 7/2 9/7 11/12 16/10 21/8 22/12 22/14 22/18 24/6 24/24 24/25 29/13
**they're [2]** 10/6 25/1
**they've [1]** 21/15
**thing [5]** 8/9 26/3 35/2 35/9 36/9
**things [1]** 20/24
**think [20]** 17/13 18/1 18/15 19/1 20/5 23/11 23/19 24/16 25/18 26/23 27/8 27/25 28/22 29/7 29/17 29/23 29/25 30/16 37/3 37/8
**thinks [2]** 26/17 35/15
**third [2]** 4/25 12/16
**this [53]**
**thorough [2]** 10/19 26/8
**those [11]** 14/19 17/21 18/16 20/23 24/17 26/6 29/10 29/12 29/14 31/9 36/21
**threats [1]** 29/22
**three [1]** 4/15
**through [6]** 4/20 11/15 13/16 14/11 20/8 29/13
**time [16]** 10/6 10/11 13/23 13/23 14/21 15/7 18/5 19/4 23/21 29/20 29/22 30/1 30/7 31/20 31/25 35/20
**times [1]** 27/10
**timing [1]** 29/15
**titled [1]** 38/4
**today [3]** 16/16 16/21 22/9
**took [7]** 28/21 29/20 29/24 30/1 30/6 30/12 30/17
**tool [1]** 23/13
**Top [1]** 7/14
**transcript [3]** 1/9 2/7 38/3
**transcription [1]** 2/7
**travel [1]** 8/12
**traveler [5]** 4/9 5/18 6/9 8/16 16/17
**treated [1]** 32/15
**treatment [1]** 13/18
**tri [1]** 11/14
**tri-state [1]** 11/14
**true [1]** 6/3
**Trusted [3]** 4/9 6/9 16/17
**truthful [1]** 21/14
**trying [1]** 31/19
**TSA [1]** 29/8
**TTP [1]** 10/20
**Turning [1]** 32/9
**turns [1]** 5/20
**two [9]** 4/10 14/6 17/21 18/16 29/16 29/19 33/2 36/8 36/16
**two-page [1]** 4/10
**type [2]** 14/3 14/4
**typically [2]** 33/9 33/11

**U**

**U.S [2]** 1/19 2/4
**U.S. [3]** 5/9 5/24 35/5
**U.S. citizens [3]** 5/9 5/24 35/5
**ultimate [2]** 12/22 32/24
**unable [2]** 11/5 12/9
**unalterably [1]** 12/9
**under [20]** 5/2 11/3 12/4 14/7 16/5 17/10 18/13 18/19 19/4 19/9 19/14 22/1 24/2 24/5 26/10 32/14 32/24 34/24 35/6 35/12
**underlying [1]** 12/24
**undermined [1]** 11/10
**understandable [1]** 29/19
**understanding [2]** 6/6 17/3
**understands [1]** 23/8
**understood [1]** 7/20
**UNITED [2]** 1/1 1/10
**unlawfully [1]** 26/21
**unless [1]** 37/7
**Unlike [1]** 20/24
**unreviewable [2]** 5/3 12/17
**untrue [1]** 36/5
**unwilling [1]** 12/9
**up [3]** 3/22 17/2 20/3
**updates [1]** 37/13
**upon [2]** 10/18 25/25
**upside [1]** 5/21
**upside-down [1]** 5/21
**urgency [2]** 10/16 32/5
**usdoj.gov [1]** 1/23
**use [2]** 9/25 19/23
**used [1]** 15/21

**V**

**vacate [2]** 4/14 11/24
**vacated [1]** 13/21
**vacatur [5]** 28/8 28/12 31/23 31/24 32/2
**value [1]** 25/15
**various [1]** 29/21
**versus [8]** 3/5 28/10 29/6 32/12 32/13 32/14 32/21 32/23
**very [12]** 15/8 19/16 21/22 21/23 29/7 30/8 31/10 33/9 35/24 37/9 37/10 37/16
**vet [1]** 15/22
**vetting [4]** 10/19 16/17 21/9 25/1
**Vigil [6]** 18/2 18/22 21/24 32/12 32/15 32/21
**violate [1]** 16/1
**violated [1]** 26/21
**violation [2]** 4/13 27/3
**violations [1]** 21/15
**vs [1]** 1/5
**vulnerabilities [1]** 29/21

**W**

**waited [1]** 10/21
**want [4]** 15/5 28/15 33/4 35/24
**warranted [1]** 14/17
**was [48]**
**Washington [4]** 1/5 1/15 1/22 2/5
**way [5]** 6/11 22/6 22/13 34/23 35/10
**ways [1]** 27/10
**we [12]** 3/4 23/11 24/17 26/23 27/8 27/16 27/23 27/25 28/6 28/22 29/5 29/7
**we'd [1]** 28/13
**We'll [3]** 3/21 15/9 30/9
**We're [1]** 3/19
**we've [2]** 26/24 32/6
**Welcome [1]** 3/18
**well [11]** 3/25 11/13 18/12 19/1 19/2 21/16 25/17 29/24 30/18 37/9 37/10
**were [8]** 6/25 8/20 16/10 22/7 29/10 29/14 33/5 36/6
**what [10]** 12/25 18/5 20/2 20/24 22/5 22/22 25/13 25/14 32/17 34/16
**What's [1]** 4/1
**Wheeler [1]** 1/13
**when [12]** 10/15 13/6 15/20 18/21 30/12 30/17 31/19 32/1 32/5 33/15 33/16 37/11
**where [11]** 11/5 18/2 19/25 21/24 22/14 22/19 23/21 27/4 28/11 30/4 33/10
**whether [23]** 9/13 12/20 13/3 13/11 13/13 15/18 18/3 19/17 20/1 20/7 21/13 21/16 22/24 24/8 26/2 28/2 28/17 31/22 32/9 32/18 33/1 33/12 33/15
**which [25]** 5/23 9/16 10/2 13/10 16/13 16/15 18/6 19/12 19/21 20/2 21/4 21/5 21/9 22/6 22/7 22/8 22/22 24/16 25/19 27/22 29/5 29/7 31/2 31/15 31/20
**while [2]** 36/7 36/25
**White [8]** 1/13 3/10 4/1 6/1 6/3 13/25 36/12 36/14
**who [4]** 7/13 11/9 11/11 22/1
**whole [1]** 21/11
**whom [2]** 11/2 35/14
**why [7]** 10/7 10/12 12/6 21/6 30/3 30/6 36/24
**will [8]** 3/8 3/14 3/24 4/16 20/20 20/21 34/6 34/6
**William [4]** 2/2 38/2 38/10 38/11
**withdrawn [1]** 19/4
**withdraws [1]** 19/11
**within [2]** 7/12 10/1
**without [8]** 4/11 13/20 14/10 28/7 29/8 31/23 31/24 32/2
**WOLF [2]** 1/6 3/5
**words [3]** 16/21 19/6 26/15
**works [1]** 13/8
**world [1]** 25/23
**Worldcom [1]** 28/10
**worth [1]** 36/9
**would [22]** 4/4 8/21 10/12 11/8 12/4 12/14 19/13 25/13 25/20 26/4 26/12 26/18 27/16 27/23 28/1 28/7 35/9 35/10 35/16 35/24 36/24 37/5
**wouldn't [1]** 36/18
**wrong [2]** 5/1 28/23

**Y**

**years [3]** 25/25 29/16 29/19
**Yes [2]** 15/6 17/3
**York [20]** 4/11 6/8 7/13 8/24 8/25 10/19 10/20 10/22 11/12 11/15 15/20 15/22 16/23 17/2 21/8 22/13 24/9 32/6 34/20 36/2
**York's [5]** 10/18 11/9 16/16 16/22 37/14
**Yorker [3]** 7/13 8/21 11/2
**Yorker's [1]** 34/19
**Yorkers [21]** 4/8 4/17 5/21 6/11 6/25 7/16 7/17 8/3 8/6 9/6 11/13 13/2 14/12 14/13 24/4 33/6 33/22 35/7 36/2 36/6 36/25
**Yorkers' [1]** 24/1
**you [30]** 3/21 4/2 4/6 4/16 13/25 15/4 15/5 15/5 15/8 15/10 17/6 17/7 23/9 24/16 28/7 28/16 29/15 29/21 30/8 30/10 36/11 36/13 36/14 37/9 37/11 37/12 37/15 37/16 37/17 37/18
**you know [1]** 29/21
**you'd [1]** 3/23
**you'll [1]** 37/11
**your [28]** 3/2 3/23 4/1 4/2 14/16 15/4 15/10 16/13 16/15 17/3 17/13 17/22 19/2 19/21 20/11 20/11 22/16 22/24 25/17 27/1 27/17 27/24 28/5 28/6 28/15 30/7 30/10 37/18
**Your Honor [22]** 3/2 4/2 15/10 16/13 16/15 17/3 17/13 17/22 19/2 19/21 20/11 20/11 22/16 22/24 25/17 27/1 27/17 27/24 28/5 28/15 30/10 37/18

**Z**

**Zaremba [4]** 2/2 38/2 38/10 38/11