**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JONATHAN DIMAIO,<br>　　et al.,<br><br>　　　　*Plaintiffs*,<br><br>　　　　v.<br><br>CHAD WOLF, in his official capacity as Acting Secretary of Homeland Security,<br>　　et al.,<br><br>　　　　*Defendants*. | Case No.  1:20-cv-00445 |

## POST-ARGUMENT LETTER

Plaintiffs submit this post-argument letter to address the Government's contention, made for the first time at oral argument, that the Court should remand without vacatur to allow the Department of Homeland Security to issue a good cause finding.[1] The Government did not seek remand without vacatur in its briefing and the issue is therefore waived. *See Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (an argument first raised at oral argument is waived).

Waiver aside, remand without vacatur is inappropriate because it "remains an exceptional remedy." *Am. Great Lakes Ports Assoc. v. Schultz*, No. 18-514, slip op. at 15 (D.C. Cir. June 16, 2020).  It is particularly inappropriate where the agency seeks to issue a good-cause finding on remand.  *See, e.g.*, *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 92-93 (D.D.C. 2007) (Bates, J.) (rejecting the agency's request for remand-without-vacatur to issue a good-cause finding).  DHS "will be in just as good a position to make and justify a finding of good cause after vacatur as [it]

---

[1] *See* Hr'g Tr. at 28:5-9.

would be under a remand-only disposition. Indeed, the fact that vacatur takes the rule off the books arguably gives the [agency] a greater incentive to act promptly in invoking the good-cause exception." *Id.* at 92.

Moreover, remand without vacatur is appropriate only where (1) the rule's deficiencies are minor, making it likely that the agency "will be able to substantiate its decision on remand," and (2) vacating the rule will have disruptive consequences. *Allied-Signal v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). Neither condition is present here. The D.C. Circuit has held that the "failure to provide the required notice and to invite public comment . . . is a fundamental flaw that normally requires vacatur of the rule." *Heartland Regional Medical Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009). The deficiency here was not simply a "failure … adequately to explain" one small aspect of a rule, but complete disregard of the most basic rulemaking requirement of notice-and-comment. *Id.* (contrasting the former error, where remand without vacatur may be appropriate, with the latter, where it is not).

In addition, DHS's invocation of good cause on remand would be entirely meritless and therefore could not salvage the rule. For one thing, it is "well established that good cause cannot arise as a result of the agency's own delay." *Nat'l Venture Capital Ass'n v. Duke*, 291 F. Supp. 3d 5, 16 (D.D.C. 2017) (collecting D.C. Circuit cases). "Otherwise, an agency unwilling to provide notice or an opportunity to comment could simply wait until the eve of a statutory, judicial, or administrative deadline, then raise up the 'good cause' banner and promulgate rules without following APA procedures." *Council of S. Mountains v. Donovan*, 653 F.2d 573, 581 (D.C. Cir. 1981). The agency's delay here is indisputable: The Government has already acknowledged that New York's Green Light Law was enacted on June 17, 2019, which was eight months prior to the issuance of the February 5 Rule. *See* Defs.' Opp. Mot. Summ. J. at 6. The Government does not

suggest that it failed to understand at that time that the law would have the consequence of eliminating any direct CBP access to DMV records. Nor was immediate action necessary to prevent criminals or other high-risk individuals from enrolling in Global Entry, as the Government previously argued. *Id.* at 20. The existing regulations already permit DHS to deny the application of any person as to whom it has a risk concern. *See* 8 C.F.R. § 235.12. Accordingly, there is no plausible "emergency" that precludes notice and comment here. *See* Pls.' Reply in Support of Mot. Summ. J. at 14-16.

And vacatur will have no disruptive consequences. It will simply restore New Yorkers' ability to apply for and participate in Global Entry, subject to the same regulations and vetting procedures that apply to Americans in every other jurisdiction. As noted, DHS will not be required to *approve* the application of any New Yorker as to whom it has concerns. Any claim that processing New Yorkers' applications will nonetheless cause disruption is belied by the fact that, as documents the government has now produced as part of the Administrative Record indicate, "California, Nevada, Hawaii, Oklahoma, Illinois, South Carolina, Connecticut, Vermont, Guam, Oregon, and the U.S. Virgin Islands also restrict access of DMV information for immigration enforcement purposes," yet DHS continues to accept applications from these states and territories.[2] In any event, DHS cannot currently finalize any applications anyway because it has temporarily closed its Trusted Traveler Program Enrollment Centers, where applicants participate in an in-person interview to culminate the application process.[3]

---

[2] Administrative Record at DHSGLL032, *New York v. Wolf*, No. 1:20-cv-01127, ECF No. 65 (S.D.N.Y. June 17, 2020). The Government has not yet filed the administrative record on the docket in this matter, but has confirmed that all of the documents included in the *New York v. Wolf* matter are part of the administrative record in this matter as well.

[3] Dep't of Homeland Sec., Trusted Traveler Programs, *available at* https://bit.ly/2B2e9cB (last visited June 23, 2020) (noting that enrollment centers will be closed until "at least" July 6, 2020).

Finally, "where a reviewing court has invalidated a rule without reaching additional potentially meritorious challenges to it, vacatur is the appropriate remedy." *Chao*, 496 F. Supp. 2d at 93 (citing *Natural Res. Defense Council v. EPA*, 489 F.3d 1250 (D.C. Cir. 2007); *Cement Kiln Recycling Coal. V. EPA*, 255 F.3d 855 (D.C. Cir. 2001)). "Vacatur . . . has the virtue of eliminating the significant risk that [regulated parties] will be forced . . . to comply with a rule that this Court has found to be procedurally defective and whose substantive validity has not yet been confirmed." *Id.* That would be the case here should the Court find DHS's action procedurally defective, as the Plaintiffs have not yet moved for summary judgment on their substantive challenges to the February 5 Rule. *See* Pls.' Mot. Summ. J. at 2 n.1; Compl. ¶¶ 80-88, *DiMaio v. Wolf*, 1:20-cv-00445 (D.D.C. Feb. 14, 2020). Moreover, at the March 4 status conference, the Court ordered partial summary judgment briefing on Plaintiffs' procedural claim rather than briefing on all of the claims on the express understanding that a ruling for Plaintiffs on the procedural claim would provide Plaintiffs with all of the relief that they sought, namely vacatur of the rule. The Government did not dispute that understanding at the time or suggest that the Court should or could remand without vacatur in the event that Plaintiffs' partial summary judgment motion was granted. As noted, the Government did not raise the possibility of remand without vacatur until oral argument two days ago.

Dated: June 24, 2020                    Respectfully submitted.

                                        /s/ Graham W. White
                                        Graham W. White
                                        ARNOLD & PORTER KAYE SCHOLER LLP
                                        601 Massachusetts Ave. NW
                                        Washington, DC 20001
                                        (202) 942-5000
                                        Graham.White@arnoldporter.com