**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JONATHAN DIMAIO, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 1:20-cv-00445-RJL |
| ) | |
| CHAD WOLF, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' POST-ARGUMENT LETTER

Defendants respectfully submit the following response to Plaintiffs' "Post-Argument Letter," Dkt. No. 25 ("the Letter"), in which Plaintiffs, without leave of court, improperly seek to make new legal arguments after the Court heard argument and took Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 11, under advisement. *See* Minute Entry for Proceedings on June 22, 2020. For the reasons that follow, the Court should disregard the Letter because it contains errors of law and fact.

First and foremost, Defendants did not waive any argument about remand because Defendants plainly argued against vacatur in their opposition to Plaintiffs' Motion. *See* Defs.' Opp. to Pls.' Mot. for Partial Summary Judgment ("Defs.' Opp."), Dkt. No. 14, Part III ("The Court Should Not Vacate The Changes Described In The February 5 Letter Because Any Procedural Error Was Harmless."). Second, even were that not the case, "the District Court for the District of Columbia regularly considers arguments raised for the first time at oral argument in deciding dispositive motions." *Fraternal Order of Police v. United States*, 173 F.3d 898, 902 (D.C. Cir. 1999) (citing cases). In this regard, Plaintiffs misleadingly rely on a case involving arguments being raised for the first time at oral argument at the *appellate* stage, after a party had

neglected to raise an issue before the district court and in its appellate briefs, and which therefore disadvantaged the other party. That, of course, is not the case here.[1]

Whether or not it was raised in the briefing, the D.C. Circuit has held that courts retain discretion to determine the proper remedy in cases finding a violation of the APA. *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002). In *Sugar Cane*, the D.C. Circuit recognized several instances where "[w]e have previously remanded without vacating when the agency failed to follow notice-and-comment procedures." *Id.* (citing cases). Importantly, the *Sugar Cane* court determined that "although the government did not—and could not have for the first time on appeal—assert a good cause for omitting notice and comment, it is at least possible that the Department could establish good cause because of timing exigencies." *Id.*; *see also WorldCom, Inc. v. FCC,* 288 F.3d 429, 434 (D.C. Cir. 2002) (where there is a "non-trivial likelihood" that agency could justify rule on remand, vacatur is not necessary); *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1312 (D.C. Cir. 1991) ("[W]hen equity demands, an unlawfully promulgated regulation can be left in place while the agency provides the proper procedural remedy. [] Because the removal of the EPA's exemptions may affect the EPA's ability to respond adequately to serious safety hazards, we are reluctant to remove the exemptions here."). Should the Court determine that the Acting Secretary's February 5 Letter constituted a substantive rule, Defendants have provided the Court with ample reason to determine that the agency could establish good cause on remand. *See* Defs.' Opp. at Part II.C.

---

[1] To be sure, this is a far cry from the sort of "sandbagging" for which courts have admonished parties at the appellate stage. *Cf. Physicians for Soc. Responsibility v. Wheeler,* 956 F.3d 634, 647 (D.C. Cir. 2020) (engaging with merits of argument made for first time at oral argument on appeal and which contradicted the agency's characterization in its brief); *U.S. ex rel. Davis v. District of Columbia*, 793 F.3d 120, 127 (D.C. Cir. 2015) (noting that appellant's new interpretation of the contract in dispute was not raised before the district court or in his briefs on appeal).

Further, as Plaintiffs acknowledge, when deciding whether to remand without vacatur, courts consider "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and "the disruptive consequences of an interim change that may itself be changed." *Allied–Signal, Inc. v. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Contrary to what Plaintiffs contend, both conditions apply here. There can be no reasonable doubt that the agency "correctly" determined, with regard to a matter committed completely to its discretion, that "such a gap in information precludes CBP from being able to conduct a full assessment of whether the applicant is considered low risk." Wagner Decl., Dkt. No. 14-1 at ¶ 24. Moreover, as the agency has explained, CBP cannot process the applications of New York residents without the driver license and vehicle data—a fact that necessarily affects all such applicants. *Id.* at ¶ 27. Forcing CBP to resume processing applications from New York residents would cause disruption by forcing CBP to waste countless hours on applications it cannot approve under the circumstances. Such a disruption is all the more absurd, considering that Plaintiffs concede that vacating the decision will have no meaningful effect because "DHS will not be required to approve the application of any New Yorker as to whom it has concerns." Letter at 3.

Next, Plaintiffs wrongly contend that "the Agency's delay here is indisputable." *Id.* at 2. To the contrary, that statement is far from "indisputable," and in any event, is of little consequence. While New York's Green Light Law was signed into law on June 17, 2019, by its own terms, the law became *effective* 180 days after its enactment (which fell on Saturday, December 14, 2019). *See* 2019 N.Y. Sess. Laws Ch. 37, § 8 (McKinney). CBP attests that prior to December 12, CBP was able to access, without disruption, real-time driver license and vehicle data from New York through Nlets. Wagner Decl. ¶ 23. Thus, less than sixty days transpired

3

between New York shutting off CBP's access to its DMV records and the Acting Secretary's letter to state officials regarding the Acting Secretary's considered assessment of how the Law's implementation affected the agency's critical mission operations, following a comprehensive intra-agency review.

But it makes no difference whether it was a period of sixty days or eight months. As set forth in Defendants' brief and at oral argument, the agency neither created this situation nor delayed its response. New York unilaterally acted to rescind access to records CBP uses to conduct Trusted Traveler Program vetting, and within 60 days of the cut-off of that access, the Acting Secretary announced the result of the agency's assessment of the state law's impact on agency operations. *Compare Jifry v. FAA*, 370 F.3d 1174, 1179–80 (D.C. Cir. 2004) (good cause excused agencies "for not offering advance public participation" when they promulgated regulations *in 2003* that the agencies determined were "necessary 'in order to minimize security threats and potential security vulnerabilities to the fullest extent possible'" and "[g]iven the [agencies'] legitimate concern over the threat of further terrorist acts involving aircraft in the aftermath of September 11, 2001") *with Nat'l Venture Capital Ass'n v. Duke,* 291 F. Supp. 3d 5, 16 (D.D.C. 2017) (observing, but not deciding, that "the agency may well be decrying an emergency of its own creation" when it waited six months, until the eve that the final rule was set to take effect, before announcing the delay of the rule.).

Finally, the Letter contains at least two other factual errors. First, while other States may restrict access to certain DMV information for immigration enforcement purposes,[2] New York is the *only* State that has terminated CBP's access to driver license and vehicle data via Nlets

---

[2] Plaintiffs selectively cite the Administrative Record filed in another case for this misleading assertion. *See* Letter at 3 n.2.

altogether, preventing the agency's vetting of Trusted Traveler Program applications. Wagner Decl. ¶ 23. Second, Plaintiffs mischaracterize the transcript of the status conference held on March 4. *See* Letter at 4. At that conference, Plaintiffs set forth their position that resolution of their partial summary judgment motion "would result in vacatur of the rule." March 4, 2020 Tr. at 3. The Court, however, took no position as to whether that relief would be appropriate. The Court commented only that "at least theoretically speaking, the case *may* be resolvable on a motion for partial summary judgment. *Whether it will be or won't be, who knows*." *Id*. at 12 (emphasis added). Defendants of course were not obligated in the context of a status conference to dispute Plaintiffs' position as to what relief they might seek or what relief might be appropriate for an as yet un-briefed, un-argued motion. In any event, as explained *supra*, Defendants plainly argued against vacatur in their opposition to Plaintiffs' Motion.

For the foregoing reasons, the Court should disregard Plaintiffs' "Post-Argument Letter."

Dated: June 25, 2020

Respectfully Submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Dena M. Roth*
DENA M. ROTH (DC Bar # 1001184)
CHARLES E.T. ROBERTS (PA Bar # 326539)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW, Room 11204
Washington, DC 20005
Tel: (202) 514-5108
Facsimile: (202) 616-8460
Email: dena.m.roth@usdoj.gov

*Counsel for Defendants*