UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN DIMAIO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CHAD WOLF, <br> *in his official capacity as Acting Secretary of Homeland Security*, <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Civil Case No. 20-445 (RJL) <br><br> **FILED** <br> NOV 17 2020 <br> Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

## MEMORANDUM OPINION

(November 17, 2020) [Dkt. # 30]

This is an Administrative Procedure Act case challenging the U.S. Department of Homeland Security rule, issued on February 5, 2020, that purported to make residents of the State of New York ineligible to enroll or re-enroll in U.S. Custom and Border Protection's Trusted Traveler Programs, including the Global Entry program. After approximately six months of litigation and negotiations, the parties have now reached a settlement agreement to resolve the case in full, and seek an order from this Court incorporating that agreement into a final order of dismissal. On October 16, 2020, I held a hearing to inquire further into the reasonableness of the attorney fees component of that settlement agreement. Having considered the parties' submissions, the arguments and representations made at the hearing,

and the relevant law, I find that the attorney fees agreed to by the parties in this case are *not* reasonable, and therefore will DENY the parties' request to incorporate their agreement into a final order of dismissal.

## BACKGROUND

On February 5, 2020, the Acting Secretary of the Department of Homeland Security sent notice to officials at New York State's Department of Motor Vehicles, stating that "effective immediately," DHS would bar residents of New York from enrolling or re-enrolling in Customs and Border Protection's Trusted Traveler Programs, including the Global Entry Program. DHS explained that its decision was due to a recent New York law, the "Green Light Law," that both allows undocumented immigrants residing in New York to obtain driver's licenses and bans federal immigration officials from accessing state DMV databases absent a court order. DHS claimed that the New York law compromised CBP's ability to confirm whether individuals applying to Trusted Traveler Programs met the eligibility requirements because DHS was unable to access New York's DMV records.

On February 14, 2020, plaintiffs brought suit challenging that DHS policy. Plaintiffs are New York residents who planned to enroll in Trusted Traveler Programs or had an application pending when the policy was announced. According to the complaint, the policy affected approximately 80,000 New York residents who had applications pending for Trusted Traveler Programs. Plaintiffs contended DHS's policy violated the APA because it: (1) was

not adopted in compliance with the required notice-and-comment procedure; (2) was arbitrary, capricious, and an abuse of discretion; and (3) was not in accordance with law.

On March 13, 2020, plaintiffs filed a motion for partial summary judgment. I held an oral argument on that motion on June 22, 2020. Following oral argument, defendants filed a Notice of Correction on July 23, 2020, stating that the Acting Secretary of Homeland Security had "determined that it is appropriate to restore New York residents' eligibility to participate in Trusted Travel Programs ('TTPs'), effective immediately." The Notice further admitted that certain statements made by defendants during and before the litigation were "inaccurate in some instances and [gave] the wrong impression in others," including statements made in defendants' summary judgment briefing. Essentially, defendants had represented in this Court and elsewhere that the data restrictions imposed by New York's Green Light Law precluded CBP from conducting adequate risk assessments of New York applicants for TTPs, when in fact several states and other jurisdictions, whose residents were eligible for TTPs, had in place similar restrictions. These inaccurate and misleading statements, according to defendants themselves, "undermine a central argument in Defendants' filings to date: that CBP is not able to assure itself of an applicant's low-risk status because New York fails to share relevant DMV information with CBP for TTP purposes."

Shortly thereafter, on August 25, 2020, the parties filed a Joint Motion to Dismiss, attaching a settlement agreement that resolves the case in full. Among other things, the

settlement agreement provides for defendants to pay attorney fees and expenses totaling $212,139.70 to plaintiffs' counsel, Arnold & Porter Kaye Scholer, LLP ("Arnold & Porter"). The parties request an order from this Court incorporating the settlement agreement into an order of dismissal. I held a hearing on October 16, 2020, to inquire further into the reasonableness of the attorney fees portion of the settlement agreement.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 41(a) provides for voluntary dismissal of actions in federal courts. Per Rule 41(a)(1)(A)(ii), a plaintiff may dismiss an action without a court order by filing "a stipulation of dismissal signed by all parties who have appeared." Here, however, the parties move this Court for an order of dismissal that incorporates the parties' settlement agreement. Rule 41(a)(2) provides that, "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, *on terms that the court considers proper.*" Fed. R. Civ. Proc. 41(a)(2) (emphasis added).

Incorporation of the settlement agreement into an order of dismissal pursuant to Rule 41(a)(2) would allow the Court to maintain jurisdiction to enforce the parties' agreement, whereas "[p]rivate settlements do not entail . . . judicial approval and oversight," and "federal courts are without jurisdiction to enforce a private settlement agreement unless its terms are incorporated into [an] order of dismissal." *Arthur v. District of Columbia*, 106 F. Supp. 3d 230, 233 (D.D.C. 2015) (internal quotations and citations omitted). However, this Court will

incorporate the parties' settlement agreement into an order of dismissal pursuant to Rule 41(a)(2) only if the Court "considers proper" the terms of such an agreement.

## ANALYSIS

The parties have made it clear to the Court that their settlement agreement does *not* require judicial approval and is in fact self-executing. Fine. Negotiating an agreement in a *pro bono* case that bypasses judicial approval and requires defendants to pay in excess of $200,000 in attorney fees might warrant a tip of the proverbial cap from fellow practitioners, but it is irrelevant to a judicial analysis of whether to incorporate the parties' agreement into an order of dismissal. Indeed, while I am satisfied that the remaining provisions of the parties' agreement are fair and reasonable, I am quite concerned, and have been from the outset, about the reasonableness of the amount of attorney fees agreed to by the parties.

As the parties are undoubtedly aware, courts do not have many opportunities to opine on the reasonableness of attorney fees when the amounts are agreed to by the parties. The Court here, however, is mindful of its responsibility to ensure that the fees are reasonable under the circumstances in order to make a fulsome determination of whether the terms of the settlement agreement are "proper" pursuant to Rule 41(a)(2). I take this obligation especially seriously where, like here, the agreed-upon fees will be taken from the public fisc. Unlike defendants' counsel, the Court has requested the actual billing records from Arnold & Porter reflecting attorney hours billed to this case, and has received the same. Upon review of the number of attorneys working on the case, the number of hours billed, and the billing rates of

the attorneys (ranging from $750 to $990 per hour), I have concluded that the attorney fees agreed to in this case are *not* reasonable. How so?

First, Arnold & Porter's billing records show that eight total attorneys—two partners and six associates—billed time on this matter. The Court finds this number of attorneys to be entirely unnecessary to the needs of the case. In a case of this complexity—which spanned only six months and entailed drafting and arguing only one substantive motion—the Court believes that two partners and two associates would have been more than sufficient to complete the needed work.

Second, the Court finds that charging defendants for time billed at Arnold & Porter's standard, corporate rates is not reasonable under the circumstances here. Arnold & Porter is, according to its own website, a "world-class" firm, handling complex regulatory, litigation, and transactional solutions for its corporate clients' most complex challenges. In a case of this kind, where the agreed-upon fees will ultimately be paid by the taxpayer, applying Arnold & Porter's standard corporate rates makes little sense. The Court believes that a more reasonable approach to calculate reasonable hourly rates under these circumstances would be to do so under the *Laffey* Matrix.

The *Laffey* Matrix sets out a general guideline for awarding attorney fees based on experience. *See generally Laffey v. Nw. Airlines, Inc.*, 572 F.Supp. 354, 371–75 (D.D.C. 1983) (establishing the first *Laffey* fee matrix, in the context of a longstanding employment discrimination class action), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4

(D.C.Cir.1984), *overruled in part on other grounds*, *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir.1988)). Updated versions of the *Laffey* Matrix are regularly used by courts in this Circuit to determine reasonable hourly rates for legal work. *See Hayes v. D.C. Public Schools*, 815 F.Supp.2d 134, 143 (D.D.C. 2011). Indeed, the United States Attorney's Office for the District of Columbia prepares an updated matrix commonly applied to calculate reasonable attorney fees in this Circuit. *See id.*; *Smith v. District of Columbia*, 466 F.Supp.2d 151, 156. The updated USAO *Laffey* Matrix rates are, not surprisingly, substantially lower than Arnold & Porter's corporate billing rates. *See generally* U.S. Atty's Office for D.C. *Laffey* Matrix 2015-2020, https://www.justice.gov/usao-dc/page/file/1189846/download (last visited October 22, 2020). The Court finds that under the circumstances here, using the updated USAO *Laffey* Matrix is more reasonable than using the standard Arnold & Porter corporate rates as provided in the settlement agreement.

With two partners and six associates billing at Arnold & Porter's standard rates, the parties have agreed to an attorney fee award totaling $206,500.50. If the amount was reduced to just two partners and two associates (assuming the retention of the two highest-billing associates), and the USAO *Laffey* Matrix rates were applied, the attorney fee award would total $82,562.20. This Court believes that attorney fees totaling $82,562.20 would be much more reasonable and fair under the circumstances here than the award set forth in the settlement agreement.

Defense counsel from the Department of Justice acknowledged at the October 16, 2020 hearing that while negotiating the settlement agreement, they did not request Arnold & Porter's billing records for review, nor did they suggest that attorney fees in this case be calculated according to anything other than Arnold & Porter's standard corporate rates. The Court believes that the Department of Justice should have been much more aggressive in protecting the public fisc. Perhaps, however, it is not so surprising that they weren't in this case. After all, it is not every day the Department of Justice and their clients have to confess to written and oral misrepresentations on the record in a high profile case! It would appear that Arnold & Porter simply capitalized—unfortunately at taxpayer expense[1]—on the Government's apparent desire to dispose of the case as quickly as possible. I certainly hope, and expect, that the Department's leadership will take the necessary steps in the future, especially in cases that involve embarrassing conduct of the type here, to ensure that the fees agreed to by the Department, and ultimately paid by the taxpayer, are indeed fair and reasonable.

---

[1] By way of mitigation, Arnold & Porter was quick to note in its pleading that the fees at issue will be directed in their entirety to the Arnold & Porter Foundation, a tax-exempt charitable organization that provides funding for fellowships for recent law school graduates, scholarships to underrepresented law students, and grants to other charitable and educational organizations. While I commend Arnold & Porter's charitable intentions, for which they undoubtedly receive much favorable public recognition, this is irrelevant to a judicial analysis of whether the fees in a case like this are, in fact, fair and reasonable, and thus "proper." Indeed, there was a time earlier in my career when *pro bono* literally meant *pro bono* and not a penny would be collected for the time expended by either a law firm or an individual counsel who was providing the services on a *pro bono* basis.

## CONCLUSION

For all of the foregoing reasons, the Court DENIES [30] the parties' Joint Motion to Dismiss. The parties may file a stipulation of dismissal pursuant to Rule 41(a)(1)(a)(ii), or may file another Rule 41(a)(2) motion after modifying the attorney fees portion of their settlement agreement.

**SO ORDERED.**

_____
**RICHARD J. LEON**
**United States District Judge**